

**ATTACHMENT OF APPLICATION**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective<br>        03/10/2004 |  |
|---|---|
| Named Insured<br>Gerald L Ruhnow | Countersigned by |
| dba Ruhnow Trucking | (Authorized Representative) |

A. You are hereby notified that the signed application is part of the policy. You shall be bound by any statement made in the application.

T-363 (9/96)

FORM MCS-90
(Ed. 10-99)

**ENDORSEMENT FOR**

OMB NO. 2125-0074

# MOTOR CARRIER POLICIES OF INSURANCE FOR PUBLIC LIABILITY UNDER SECTIONS 29 AND 30 OF THE MOTOR CARRIER ACT OF 1980

Issued to _Gerald L Ruhnow dba:_ _Ruhnow Trucking_ of _9655 N 1400th Av_ _Osco, IL 61274_

Dated at _Bloomington, IL_ this _12_ day of _March_ , _2004_

Amending Policy No. _TN415191_ Effective Date _03/10/2004_

Name of Insurance Company _Northland Insurance Company_

Telephone Number _1-309-662-2100_ Countersigned by _____

Authorized Company Representative

The policy to which this endorsement is attached provides primary or excess insurance, as indicated by " ☒ ", for the limits shown:

☒ This insurance is primary and the company shall not be liable for amounts in excess of $ _1,000,000_ for each accident.

☐ This insurance is excess and the company shall not be liable for amounts in excess of $ _____ for each accident in excess of the underlying limit of $ _____ for each accident.

Whenever required by the Federal Highway Administration (FHWA) or the Interstate Commerce Commission (ICC) the company agrees to furnish the FHWA or the ICC a duplicate of said policy and all its endorsements. The company also agrees, upon telephone request by an authorized representative of the FHWA or the ICC, to verify that the policy is in force as of a particular date.

Cancellation of this endorsement may be effected by the company or the insured by giving (1) thirty-five (35) days notice in writing to the other party (said 35 days notice to commence from the date the notice is mailed, proof of mailing shall be sufficient proof of notice), and (2) if the insured is subject to the ICC's jurisdiction, by providing thirty (30) days notice to the ICC (said 30 days notice to commence from the date notice is received by the ICC at its office in Washington, D.C.).

## DEFINITIONS AS USED IN THIS ENDORSEMENT

**ACCIDENT** includes continuous or repeated exposure to conditions which results in bodily injury, property damage, or environmental damage which the insured neither expected nor intended.

**MOTOR VEHICLE** means a land vehicle, machine, truck, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, or any combination thereof.

**BODILY INJURY** means injury to the body, sickness, or disease to any person, including death resulting from any of these.

**ENVIRONMENTAL RESTORATION** means restitution for the loss, damage or destruction of natural resources arising out of the accidental discharge, dispersal, release or escape into or upon the land, atmosphere, watercourse, or body of water, of any commodity transported by a motor carrier. This shall include the cost of removal and the cost of necessary measures taken to minimize or mitigate damage to human health, the natural environment, fish, shellfish and wildlife.

**PROPERTY DAMAGE** means damage to or loss of use of tangible property.

**PUBLIC LIABILITY** means liability for bodily injury, property damage, and environmental restoration.

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Highway Administration (FHWA) and the Interstate Commerce Commission (ICC).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

The limits of the company's liability for the amounts prescribed in this endorsement apply separately, to each accident, and any payment under the policy because of any one accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

The Motor Carrier Act of 1980 requires limits of financial responsibility according to type of carriage and commodity transported by the motor carrier. It is the MOTOR CARRIER'S obligation to obtain the required limits of financial responsibility. THE SCHEDULE OF LIMITS SHOWN BELOW DOES NOT PROVIDE COVERAGE. The limits shown in this schedule are for information purposes only.

## SCHEDULE OF LIMITS
### Public Liability

| | Type of Carriage | Commodity Transported | Minimum Insurance |
|---|---|---|---|
| (1) | For-hire (in interstate or foreign commerce) | Property (nonhazardous) | $ 750,000 |
| (2) | For-hire and Private (in interstate, foreign or intra-state commerce) | Hazardous substances, as defined in 49 CFR 171.8, transported in cargo tanks, portable tanks, or hopper-type vehicles with capacities in excess of 3,500 water gallons; or in bulk Divisions 1.1, 1.2, and 1.3 materials, Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material; in bulk Division 2.1 or 2.2; or highway route controlled quantities of a Class 7 material, as defined in 49 CFR 173.403. | $5,000,000 |
| (3) | For-hire and Private (in interstate or foreign commerce; in any quantity) or (in intrastate commerce; in bulk only) | Oil listed in 49 CFR 172.101; hazardous waste, hazardous materials and hazardous substances defined in 49 CFR 171.8 and listed in 49 CFR 172.101, but not mentioned in (2) or (4). | $1,000,000 |
| (4) | For-hire and Private (in interstate or foreign commerce) | Any quantity of Division 1.1, 1.2, or 1.3 material; any quantity of a Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material; or highway route controlled quantities of a Class 7 material as de-fined in 49 CFR 173.403. | $5,000,000 |

**Note:** The type of carriage listed under numbers (1), (2) and (3) applies to vehicles with a gross vehicle weight rating of 10,000 pounds or more. The type of carriage listed under number (4) applies to all vehicles with a gross vehicle weight rating of less than 10,000 pounds.

## SCHEDULE OF LIMITS
### Public Liability

For-hire motor carriers of passengers operating in interstate or foreign commerce

| | Vehicle Seating Capacity | Minimum Insurance |
|---|---|---|
| (1) | Any vehicle with a seating capacity of 16 passengers or more. | $5,000,000 |
| (2) | Any vehicle with a seating capacity of 15 passengers or less. | $1,500,000 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## THEFT DEDUCTIBLE

This endorsement changes the policy effective on the inception date of the policy unless a different date is indicated below.

(The following need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement is **EFFECTIVE** on    03/10/2004    at 12:01 A.M. standard time, forms a part

of Policy No.    TN415191    issued to    Gerald L Ruhnow
dba Ruhnow Trucking

_____03/12/2004_____          _____
Date                             Authorized Representative

This endorsement modifies the insurance provided under the following:

TRANSPORTATION CARGO COVERAGE FORM

A.  Theft Deductible

If "loss" to covered property is caused by or results from theft of an unattached "trailer," the following replaces Section D. Deductible.

D.  Deductible

We will not pay for "loss" in any one occurrence until the amount of the "loss" before applying the applicable Limits of Insurance, exceeds the Theft Deductible shown in the Declarations. We will then pay the amount of the "loss" in excess of the Theft Deductible.

T-404 (6/03)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AUTO MEDICAL PAYMENTS COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

## A. Coverage

We will pay reasonable expenses incurred for necessary medical and funeral services to or for an "insured" who sustains "bodily injury" caused by "accident". We will pay only those expenses incurred, for services rendered within three years from the date of the "accident".

## B. Who Is An Insured

You while "occupying" or, while a pedestrian, when struck by any "auto".

2. If you are an individual, any "family member" while "occupying" or, while a pedestrian, when struck by any "auto".

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

## C. Exclusions

This insurance does not apply to any of the following:

"Bodily injury" sustained by an "insured" while "occupying" a vehicle located for use as a premises.

2. "Bodily injury" sustained by you or any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by you or furnished or available for your regular use.

3. "Bodily injury" sustained by any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by or furnished or available for the regular use of any "family member".

4. "Bodily injury" to your "employee" arising out of and in the course of employment by you. However, we will cover "bodily injury" to your domestic "employees" if not entitled to workers' compensation benefits. For the purposes of this endorsement, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

5. "Bodily injury" to an "insured" while working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.

6. "Bodily injury" caused by declared or undeclared war or insurrection or any of their consequences.

7. "Bodily injury" to anyone using a vehicle without a reasonable belief that the person is entitled to do so.

8. "Bodily injury" sustained by an "insured" while "occupying" any covered "auto" while used in any professional racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply to any "bodily injury" sustained by an "insured" while the "auto" is being prepared for such a contest or activity.

## D. Limit of Insurance

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for "bodily injury" for each "insured" injured in any one "accident" is the Limit Of Insurance for Auto Medical Payments Coverage shown in the Declarations.

No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage and any Liability Coverage Form, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

E. Changes In Conditions

The Conditions are changed for Auto Medical Payments Coverage as follows:

The Transfer Of Rights Of Recovery Against Others To Us Condition does not apply.

2. The reference in Other Insurance in the Business Auto and Garage Coverage Forms and Other Insurance - Primary and Excess Insurance Provisions in the Truckers and Motor Carrier Coverage Forms to "other collectible insurance" applies only to other collectible auto medical payments insurance.

F. Additional Definitions

As used in this endorsement:

1. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

Copyright, Insurance Services Office, Inc., 1996

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## POLICY CHANGES - COVERED AUTO SYMBOLS

This endorsement modifies insurance provided under the following:

    TRUCKERS COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM
    BUSINESS AUTO COVERAGE FORM

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective | |
|---|---|
| Named Insured | Countersigned by |

(Authorized Representative)

SECTION I - COVERED AUTOS is amended as follows:

    7, 46, or 67 = SPECIFICALLY DESCRIBED "AUTOS"

    Only those "autos" described in ITEM FOUR of the Declarations for which a premium charge is shown ( and for Liability Coverage any "trailers" you don't own while attached to any power unit described in ITEM FOUR).

The following symbol definitions are added to SECTION I - COVERED AUTOS.  These symbols must be entered next to a coverage on the declarations in order to apply.

    Symbol 11, 51, or 73 = REPORTED "AUTOS"

    All "autos" scheduled at inception are covered as well as any additional "autos" added during the month preceding the submission of the monthly report.  If the "auto" is not scheduled on the first monthly report following the acquisition of the "auto," there is no coverage until such time as the "auto" is reported to us.

    Symbol 12, 52, or 72 = ANY "AUTO" EXCEPT A "PRIVATE PASSENGER TYPE" "AUTO"

    Any "auto" except an "auto" of the "private passenger type."

Includes Copyrighted Material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1987

**THIS ENDORSEMENT CHANGES THE POLICY - PLEASE READ IT CAREFULLY.**

## PHYSICAL DAMAGE COVERAGE CHANGES

*This endorsement is EFFECTIVE                    *and is part of Policy Number:

*issued to:

*Entry optional if shown in the Policy Declarations.  If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

This endorsement modifies insurance under the following:

TRUCKERS COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
BUSINESS AUTO COVERAGE FORM

This endorsement provides only those coverages where a premium is shown in the Declarations.  Each of these coverages applies only to the vehicles shown as covered "autos."

The following changes are made to:

TRUCKERS COVERAGE FORM: SECTION IV - PHYSICAL DAMAGE COVERAGE
MOTOR CARRIER COVERAGE FORM: SECTION IV - PHYSICAL DAMAGE COVERAGE

Under the heading B. Exclusions, the section that reads "Exclusions 2.e. and 2.f. do not apply to:"; part b.(1) is replaced by the following:

    b.  Any other electronic equipment that is:

        (1) Necessary for the normal operation of the "auto" or the monitoring of the "auto's" operating system, including satellite communication equipment which is permanently installed or is removable from a housing unit which is permanently installed in the covered "auto"; or

BUSINESS AUTO COVERAGE FORM: SECTION III - PHYSICAL DAMAGE COVERAGE

Under the heading B. Exclusions, the section that reads "Exclusions 4.c. and 4.d. do not apply to:"; part b.(1) is replaced by the following:

    b.  Any other electronic equipment that is:

        (1) Necessary for the normal operation of the "auto" or the monitoring of the "auto's" operating system, including satellite communication equipment which is permanently installed or is removable from a housing unit which is permanently installed in the covered "auto"; or

The following changes are made to:

TRUCKERS COVERAGE FORM: SECTION IV - PHYSICAL DAMAGE COVERAGE; or
MOTOR CARRIER COVERAGE FORM: SECTION IV - PHYSICAL DAMAGE COVERAGE; or
BUSINESS AUTO COVERAGE FORM: SECTION III - PHYSICAL DAMAGE COVERAGE

whichever applies.

    C.  LIMITS OF INSURANCE is replaced by the following:

    C.  LIMITS OF INSURANCE

        Subject to the stated limit shown in the Declarations, the most we will pay for a total loss where a "finance agreement" exists and the stated value is equal to or greater than the outstanding financial obligation is the greater of:

        a.  The outstanding financial obligation under a "finance agreement" for a covered "auto" at the time of loss; or

        b.  The actual cash value of the covered "auto" at the time of the loss.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1996

In addition, we will endeavor to send you payment within 60 days of a "loss" due to theft and within 30 days for any other "loss." If we do not, subject to the LIMIT OF INSURANCE, we shall also pay for additional payments your "finance agreement" generates, for the covered "auto" only, after the 60th day or 30th day, whichever applies.

2. The most we will pay for any other "loss" in any one "accident" is the lesser of:

  The amount shown as the stated amount in the Schedule or in the Declarations;

  b. The actual cash value of the damaged or stolen property as of the time of the "loss"; or

  c. The cost of "repairing" or replacing the damaged or stolen property with other of like kind and quality.

  d. However, if the stated amount is less than 80% of the actual cash value at the time of "loss," the most we will pay for "loss" is the smallest of the following amounts:

    (1) The share of the "loss" that the stated amount bears to 80% of the actual cash value of the property at the time of "loss";

    (2) The actual cash value of the damaged or stolen property at the time of "loss"; or

    (3) The stated amount shown in the Declarations.

3. With respect to a covered "auto" not described in the Declarations, the most we will pay for "loss" is the smaller of 2.b. or 2.c. in above paragraph, reduced by the largest deductible applied to an "auto" of the same type in the Declarations.

4. We will include the reasonable cost of protecting the damaged property as part of a covered "loss."

5. We will pay under Comprehensive Coverage for the cost of repairing the damaged windshield on "your covered auto" without a deductible. We will pay only if the Declarations indicates that Comprehensive Coverage applies.

The following is added to:

**TRUCKERS COVERAGE FORM: SECTION IV - PHYSICAL DAMAGE COVERAGE**
**MOTOR CARRIER COVERAGE FORM: SECTION IV - PHYSICAL DAMAGE COVERAGE**

B. Exclusions

  5. At the time of your loss, we will not pay you for any of the following:

    a. Overdue "finance agreement" payments including any type of late fees or penalties;

    b. Financial penalties imposed under a "finance agreement" for excessive use, abnormal wear and tear or high mileage;

    c. Security deposits not normally refunded by the lessor or lender;

    d. Cost of "finance agreement" related products such as, but not limited to, Credit Life Insurance, Health, Accident or Disability insurance purchased by you;

    e. Carry-over balances from previous "finance agreements" or other amounts not associated with the covered "auto"; or

    f. Unpaid principal included in the outstanding "finance agreement" balance that was not used by you to purchase the covered "auto."

The following is added to:

**BUSINESS AUTO COVERAGE FORM: SECTION III - PHYSICAL DAMAGE COVERAGE**

B. Exclusions:

  6. At the time of your loss, we will not pay you for any of the following:

    a. Overdue "finance agreement" payments including any type of late fees or penalties;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1996

b. Financial penalties imposed under a "finance agreement" for excessive use, abnormal wear and tear or high mileage;

c. Security deposits not normally refunded by the lessor or lender;

d. Cost of "finance agreement" related products such as, but not limited to, Credit Life Insurance, Health, Accident or Disability insurance purchased by you;

e. Carry-over balances from previous "finance agreements" or other amounts not associated with the covered "auto"; or

f. Unpaid principal included in the outstanding "finance agreement" balance that was not used by you to purchase the covered "auto."

Additional definitions as used in this endorsement:

"Finance agreement" means a written lease or loan contract, entered into, as a part of your business, pertaining to the lease or purchase by you of a covered "auto," and subject to a valid promissory note or written payment obligation contained in a lease, and security agreement or other written agreement establishing a security interest, executed concurrently with the purchase or lease of the covered "auto."

2. "Repairing" does not mean replacing.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1996

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## POLICY CHANGES - ADDITIONAL CONDITIONS

\* This endorsement is **EFFECTIVE**                      \* and is part of Policy Number:

\* issued to:

\* Entry optional if shown in the Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

This endorsement modifies insurance under the following:

TRUCKERS COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
BUSINESS AUTO COVERAGE FORM

The following paragraph is added to:

TRUCKERS COVERAGE FORM:  SECTION V - TRUCKERS CONDITIONS; or
MOTOR CARRIER FORM:  SECTION V - MOTOR CARRIER CONDITIONS; or
BUSINESS AUTO COVERAGE FORM:  SECTION IV - BUSINESS AUTO CONDITIONS

whichever applies.

C. **ADDITIONAL CONDITIONS**

1. **INSPECTION**

   At our option, we may inspect your property and operations at any time. These inspections are for our benefit only. By our right to inspect or by our making any inspection, we make no representation that your property or operations are safe, not harmful to health or comply with any law, rule, or regulation.

   **CONFORMITY TO STATUTE**

   Terms of your policy which are in conflict with the statutes of the state in which this policy is issued are hereby amended to conform to such statutes.

3. **DEATH OF THE INDIVIDUAL NAMED INSURED**

   If you die:

   a. Your surviving spouse, if a resident of the same household at the time of your death will continue as the named "insured" until the end of the policy; or

   b. Your legal representative will be the named "insured" but only while acting within the scope of his or her duties as such.

4. **TRANSFER OF YOUR INTEREST IN THIS POLICY**

   Your rights and duties under this policy may not be assigned without our written consent.

5. **NO ABANDONMENT**

   You may not abandon any covered "auto" or damaged property to us.



In accordance with Public Act 80-823 (House Bill 1472 of 1977) you are hereby informed that if you have any complaints regarding your policy, you may address them to:

Northland Insurance Companies
1295 Northland Drive
St. Paul, MN 55120-1139
Attn: Government Relations Department

State of Illinois, Department of Insurance
Consumer Services Division
320 West Washington
Springfield, IL 62767

TF-037 (R 5/93)



# COMMERCIAL INSURANCE POLICY

**Northland Insurance Company**
**Northland Casualty Company**
**Northfield Insurance Company**
1295 Northland Drive
Mendota Heights, MN  55120
1-800-237-9334

Stock Companies

The Coverage Form and Declarations are subject to the Common Policy Conditions. These provisions, combined with any endorsements, form your Commercial Auto Policy.

## YOUR COMMERCIAL AUTO POLICY - QUICK REFERENCE

PART 1 - COVERAGE FORM

| | |
|---|---|
| SECTION | COVERED AUTOS |
| | A. Description of Covered Auto Designation Symbols |
| | B. Owned Autos You Acquire After the Policy Begins |
| | C. Certain Trailers, Mobile Equipment and Temporary Substitute Autos |
| SECTION II | LIABILITY COVERAGE |
| | A. Coverage |
| | B. Exclusions |
| | C. Limit of Insurance |
| SECTION III | TRAILER INTERCHANGE COVERAGE |
| | A. Coverage |
| | B. Exclusions |
| | C. Limit of Insurance and Deductible |
| SECTION IV | PHYSICAL DAMAGE COVERAGE |
| | A. Coverage |
| | B. Exclusions |
| | C. Limits of Insurance |
| | D. Deductible |
| SECTION V | CONDITIONS |
| | A. Loss Conditions |
| | B. General Conditions |
| SECTION VI | DEFINITIONS |

PART 2 - COVERAGE FORM DECLARATIONS AND ENDORSEMENTS

IMPORTANT:  This Quick Reference does not provide coverage. Refer to the Common Policy Conditions, the Coverage Form, Declarations, and endorsements for the actual contractual provisions.

## PLEASE READ THE COMMERCIAL AUTO POLICY CAREFULLY.

Includes copyrighted material of Insurance Services Office, with its permission. Copyright, Insurance Services Office, 1990

**In witness Whereof,** we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative for us.

Secretary

President

Includes copyrighted material of Insurance Services Office, with its permission.  Copyright, Insurance Services Office, 1990

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL CRIME POLICY
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EMPLOYEE THEFT AND FORGERY POLICY
FARM COVERAGE PART
GOVERNMENT CRIME COVERAGE FORM
GOVERNMENT CRIME POLICY
KIDNAP/RANSOM AND EXTORTION COVERAGE FORM
KIDNAP/RANSOM AND EXTORTION POLICY
STANDARD PROPERTY POLICY

A. Cap On Certified Terrorism Losses

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The criteria contained in that Act for a "certified act of terrorism" include the following:

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

With respect to any one or more "certified acts of terrorism" under the federal Terrorism Risk Insurance Act of 2002, we will not pay any amounts for which we are not responsible under the terms of that Act (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

B. Application Of Exclusions

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

Copyright, ISO Properties, Inc., 2002

IL 00 21 07 0

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.



# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

The insurance does not apply:

A. Under any Liability Coverage, to "bodily injury" or "property damage:"



(1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

C. Under any Liability Coverage, to "bodily injury" c "property damage" resulting from "hazardou properties" of "nuclear material," if:

(1) The "nuclear material" (a) is at any "nuclea facility" owned by, or operated by or on beha of, an "insured" or (b) has been discharged c dispersed therefrom;

(2) The "nuclear material" is contained in "sper fuel" or "waste" at any time possessed, handlec used, processed, stored, transported c disposed of, by or on behalf of an "insured;" or

(3) The "bodily injury" or "property damage" arise out of the furnishing by an "insured" of services materials, parts or equipment in connection wit the planning, construction, maintenance operation or use of any "nuclear facility," but ; such facility is located within the United State: of America, its territories or possessions c Canada, this exclusion (3) applies only tc "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

"Hazardous properties" includes radioactive, toxic c explosive properties.

"Nuclear material" means "source material," "Specia nuclear material" or "by-product material."

"Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

(a) Any "nuclear reactor;"

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste;"

(c) Any equipment or device used for the processing fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;"

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

IL 00 17 11 98

# COMMON POLICY CONDITIONS



All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

    a. Make inspections and surveys at any time;

    b. Give you reports on the conditions we find; and

    c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    a. Are safe or healthful; or

    b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.



Copyright, Insurance Services Office, Inc. 1998
☐

# TERRORISM RISK
## INSURANCE ACT OF 2002 DISCLOSURE

This endorsement applies to the insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL PROFESSIONAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
EMPLOYEE BENEFITS LIABILITY COVERAGE PART
UMBRELLA LIABILITY COVERAGE FORM
EXCESS LIABILITY COVERAGE FORM

PROVISIONS

On November 26, 2002, the President of the United States signed into law the Terrorism Risk Insurance Act of 2002 (the "Act"). The Act establishes a short-term program under which the Federal Government will share in the payment of *"Insured Losses"* caused by certain *"Acts of Terrorism"* (each as defined in the Act).

In the event of an *Insured Loss,* Northland Insurance Company, Northland Casualty Company, and Northfield Insurance Company (collectively "Northland") are responsible for a deductible of one percent (1%) of Northland's *"Direct Earned Premiums"* (as used in the Act) for the calendar year 2001 for *Insured Losses* occurring from November 26, 2002 through December 31, 2002; seven percent (7%) of Northland's *Direct Earned Premiums* for the calendar year 2002 for *Insured Losses* occurring during calendar year 2003; ten percent (10%) of Northland's *Direct Earned Premiums* for the calendar year 2003 for *Insured Losses* occurring during calendar year 2004; or fifteen percent (15%) of Northland's *Direct Earned Premiums* for the calendar year 2004 for *Insured Losses* occurring during calendar year 2005. The Federal Government's share of compensation for *Insured Losses* in each year is 90% of the amount of *Insured Losses* in excess of Northland's deductible for that year. Northland is responsible for the payment of the remaining 10% of *Insured Losses.* In no event, however, will the Federal Government or any *"Insurer"* (as defined in the Act) be required to pay any portion of the amount of aggregate *Insured Losses* occurring in any one year that exceeds $100,000,000,000, provided that such *Insurer* has met its deductible.

As a requirement of the Act, *Insurers* must make available *"Property and Casualty Insurance"* (as defined in the Act) coverage for *Insured Losses* that does not differ materially from the terms, amounts, and other coverage limitations that apply to losses arising from events other than *Acts of Terrorism.* In other words, a loss will not be excluded just because it was caused by an *Act of Terrorism;* conversely, a loss will not be covered just because it was caused by an *Act of Terrorism.* The Act also requires *Insurers* to disclose to policyholders the premium charge for providing such terrorism coverage.

Please note that your policy <u>does</u> <u>not</u> contain an exclusion that specifically excludes coverage for *Insured Losses.* The charge for this exposure is included in your policy premium. The charge that has been included is:

- 1% of each applicable Commercial Liability Coverage Premium.

- 1% of the total Commercial Automobile Coverage Premium.

- 1% of the total Commercial Crime Coverage Premium.

- 1% of the total Commercial Inland Marine Coverage Premium.

S2618-IL (1/03)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## ILLINOIS CHANGES

\* This endorsement is  EFFECTIVE                                    \* and is part of Policy Number:

\* issued to:

\* Entry optional if shown in the Common Policy Declarations.  If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

This endorsement modifies insurance under the following:

### TRANSPORTATION CARGO COVERAGE FORM

The following replaces F. GENERAL CONDITIONS, 2. Legal Action Against Us:

No one may bring a legal action against us under this Coverage Form unless:

a.  There has been full compliance with all the terms of this Coverage Form; and

b.  However, this two year time period will be extended by the number of days between which date the proof of loss is filed until the claim is denied in whole or in part.

T-445 (12/03)



TRANSPORTATION CARGO
COVERAGE FORM

COMMERCIAL INLAND MARINE

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine your rights, duties, and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations.  The words "we," "us," and "our" refer to the Company providing this insurance.  Other words and phrases that appear in quotation marks have special meaning.  Refer to G. DEFINITIONS.

## A. COVERAGE

We cover your liability as a motor carrier for "loss" to Covered Property caused by any of the Covered Causes of Loss for a covered "auto" as described in the Declarations.

Covered Property as used in this Coverage Form means:

a. Goods and merchandise for which you are legally liable under tariff documents, bills of lading or shipping receipts, and which is in your custody;

b. Goods and merchandise owned by you while loaded for shipment; or

c. Goods and merchandise for which you have assumed liability under a written lease.

We cover property while transported in or on a covered "auto."  If the covered "auto" is a truck or, tractor and used in your business then coverage is included for Covered Property while in or on:

a. Any "trailers":

If any "trailer" is unattached as the result of an accident or breakdown and awaiting either repair or transfer of the Covered Property to another "trailer," for a period not exceeding forty-eight (48) hours.

b. "Manufactured homes" while being towed by a covered "auto."

2. Property Not Covered

Covered Property does not include:

a. Accounts, bills, currency, deeds, evidence of debt, money, notes, securities or commercial paper or other documents of value;

b. Bullion, gold, silver, platinum or other precious alloys or metals; furs or fur garments; jewelry, watches, precious or semi-precious stones;

c. Painting, statuary and other works of art;

d. "Loss" to a covered "auto" or its equipment, including tarpaulins and fittings, or to reusable shipping containers;

e. Property in your care, custody or control, as a "warehouseman"; or

f. Contraband, or property in the course of illegal transportation or trade.

3. Covered Causes of Loss

Covered Causes of Loss means your liability for Direct Physical Loss to Covered Property except those causes of "loss" listed in Section B. EXCLUSIONS.

4. Coverage Extensions

a. Defense Cost

We will defend you against any suit brought against you by others for a "loss" to Covered Property caused by or resulting from a Covered Cause of Loss.  We retain our rights to investigate, negotiate, and settle any claim or suit in any manner we determine to be necessary or expedient.

We will not pay for the settlement of any claims or any suits under this Additional Coverage.  Nor will we pay any claim or judgement or defend any suit after the applicable Limit of Insurance has been exhausted by the payment of claims, suits or judgements.

The amount payable under this Coverage Extension is in addition to the Limits of Insurance shown in the Declarations.

b. Earned Freight Charges

We cover your earned freight charges that you are unable to collect resulting from a "loss" covered by this Coverage Form.  The most we will pay in any one occurrence is $2,500.  This limit is in addition to the Limit of Insurance shown in the Declarations.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1999

c. **Removal Expenses**

In addition to the Limit of Insurance:

(1) We will pay removal expenses to remove Covered Property debris caused by or resulting from a covered "loss" to Covered Property that occurs during the policy period. The term debris shall not include "pollutants."

(2) We will also pay removal expenses to extract "pollutants" from land or water. If the release, discharge or dispersal of the "pollutants" is caused by or results from a covered "loss" that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:

(a) The date of direct physical "loss"; or

(b) The end of the policy period

Any pollution damage to your "auto" is not a covered removal expense.

The most we will pay for removal expenses is $10,000 for the sum of all such expenses arising out of any one occurrence.

d. **Claim Mitigation Expense**

We will pay the necessary expense you incur to prevent further "loss" to Covered Property if that expense is incurred within a 12 hour period after a covered "loss" occurs.

The most we will pay under this Coverage Extension is $2,500 in any one occurrence. This Limit is in addition to the Limits of Insurance.

e. **Loading and Unloading**

We will extend the insurance to pay for direct physical "loss" which results from a Covered Cause of Loss to Covered Property during "loading or unloading," by you, to or from any covered "auto."

B. **EXCLUSIONS**

We will not pay your liability for a "loss" caused directly or indirectly by any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss."

a. **Governmental Action**

Seizures or destruction of property by order of governmental authority. But, we will pay for "loss" or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Form.

b. **Nuclear Hazard**

(1) Any weapon employing atomic fission or fusion; or

(2) Nuclear reaction or radiation, or radioactive contamination from any other cause. But we will pay for direct "loss" caused by resulting fire if the fire would be covered under this coverage form.

c. **War and Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay your liability for "loss" caused by or resulting from any of the following:

a. Delay, loss of use, loss of market, the Covered Property reaching or exceeding its freshness or use by date.

b. Any consequential "loss."

c. "Loss" resulting from dishonest or criminal acts by you, any of your partners, employees (including leased employees), directors, trustees, authorized representatives or anyone to whom you entrust the Covered Property for any purpose:

(1) Acting alone or in collusion with others; or

(2) Whether occurring during the hours of employment or at any other time.

d. Voluntary parting with any property by you or anyone entrusted with the property is induced to do so by any fraudulent scheme, trick, device or false pretense.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1999

e. Unauthorized instruction to transfer property to any person or to any place.

Caused by or resulting from any of the following. But if "loss" by a covered cause of loss results, we will pay for that resulting "loss."

(1) Intentional "loss."

(2) Wear and tear, obsolescence, any quality in the property that causes it to damage or destroy itself, hidden or latent defect, gradual deterioration.

(3) Insects, vermin or rodents.

g. Unexplained "loss" or shortage discovered upon taking inventory.

h. To illegal Covered Property.

i. Rough handling, insufficient securing of the Covered Property, poor or insufficient packaging, or packing of the Covered Property or poor packing of Covered Property in or on a covered "auto."

Rust, corrosion, or contamination, marring or scratching.

к. Wetness or dampness unless the Covered Property is contained in a fully enclosed, water tight dry van or is completely covered by a waterproof tarpaulin which is securely fastened.

Spoilage, freezing or change in temperature unless resulting from the mechanical breakdown or failure of the automatic temperature control unit of the covered "auto."

m. With respect to "manufactured homes":

(1) "Loss" to personal property that is not an integral part of the "manufactured home";

(2) "Loss" from the collapse or failure of the undercarriage or suspension system of the "manufactured home" including but not limited to axles, wheels or tires; or

(3) "Loss" from sagging, warping, twisting or "loss" of windows or doors from their frames unless caused directly by fire, collision or upset.

n. Non-delivery or misdelivery of Covered Property unless the non-delivery or misdelivery is the result of a cause of "loss" not otherwise excluded by this Coverage Form.

o. Cotton, within seventy-two (72) hours after ginning.

3. We will not pay for any costs, fines or penalties you incur for your violation of any law or regulation that applies to your delay in payments, denial or settlement of any claim made against you by others for "loss" to Covered Property.

## C. LIMITS OF INSURANCE

The most we will pay for "loss" to Covered Property in a single covered "auto" is the lesser of the following:

1. The amount shown as the Limit of Insurance in the Declarations; or

2. The actual cash value of the damaged or stolen Covered Property at the time of the "loss," but actual cash value shall not exceed the lower of the invoice price or the market value of the date and place of shipment.

For "manufactured homes" the actual cash value is the total value of all sections of the "manufactured home." For "auto" haulers, the actual cash value is the value of all vehicles listed on the shipping document.

## D. DEDUCTIBLE

We will not pay for "loss" in any one occurrence until the amount of the "loss" before applying the applicable Limits of Insurance, exceeds the Deductible shown in the Declarations. We will then pay the amount of the "loss" in excess of the Deductible.

## E. LOSS CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

1. Abandonment

There can be no abandonment of any Covered Property to us.

2. Appraisal

If we and you disagree on the value of the covered Covered Property or the amount of "loss," either may make written demand for an appraisal of the "loss." In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the Covered Property and amount of "loss." If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1999

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

3. **Duties in the Event of Loss**

If there is a "loss" to Covered Property or an "auto" transporting Covered Property you must do the following:

a. Notify the police if a law may have been broken or Covered Property is stolen.

b. Give us prompt notice of the "loss" or damage. Include a description of the Covered Property involved.

c. As soon as possible, give us a description of how, when, and where the "loss" or damage occurred.

d. Take all reasonable steps to protect the Covered Property from further damage and keep a record of your expenses necessary to protect the Covered Property for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent "loss" or damage resulting from a cause of "loss" that is not an excluded "loss." Also, if feasible, set the damaged Covered Property aside and in the best possible order for examination.

e. You will not, except at your own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

As often as may be reasonably required, permit us to inspect the Covered Property proving the "loss" or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged Covered Property for inspection, testing and analysis, and permit us to make copies from your books and records.

At our request, give us complete shipping documents and inventories of the damaged and undamaged Covered Property including quantities, costs, values, and amount of "loss" claimed.

g. If requested, permit us to question you under oath, at such times as may be reasonably required, about any matter relating to this insurance or your claims, including your books and records. In such event, your answers must be signed.

h. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit.

Cooperate with us in the investigation or settlement of the claim.

4. **Insurance Under Two or More Coverages**

If two or more of this policy's coverages apply to the same "loss" or damage, we will not pay more than the actual amount of the "loss" or damage.

5. **How We Will Pay for Losses**

a. "Loss" is payable to you and/ or to the owner of the Covered Property, as interests may appear.

b. In the case of Covered Property liability assumed under a written lease, this policy's coverage is primary.

c. At our option, we may:

(1) Pay for, repair or replace damaged or stolen Covered Property;

(2) Return the stolen Covered Property at our expense. We will pay for any damage that results to the Covered Property from the theft; or

(3) Take all or any part of the damaged or stolen Covered Property at an agreed or appraised value.

6. **Other Insurance**

a. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Form. If you do, we will pay our share of the covered "loss" or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Form bears to the Limits of Insurance of all insurance covering on the same basis.

b. If there is other insurance covering the same "loss" or damage, other than that described in a. above, we will pay only for the amount of covered "loss" or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But, we will not pay more than the applicable Limit of Insurance.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1999

7. **Recovered Property**

If either you or we recover any Covered Property after "loss" settlement, that party must give the other prompt notice. At your option, the covered property will be returned to you. You must then return to us the amount we paid to you for the Covered Property. We will pay recovery expenses and the expenses to repair the recovered Covered Property, subject to the Limit of Insurance.

8. **Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after "loss" to impair them.

## F. GENERAL CONDITIONS

1. **Concealment, Misrepresentation or Fraud**

This Coverage Form is void in any case of fraud, intentional concealment or misrepresentation of a material fact, by you or any other "insured," at any time, concerning:

a. This Coverage Form;

b. The Covered Property;

c. Your interest in the Covered Property; or

d. A claim under this Coverage Form.

2. **Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form unless:

a. There has been full compliance with all the terms of this Coverage Form; and

b. The action is brought within 2 years after you first have knowledge of the direct "loss" or damage.

3. **No Benefit to Bailee**

No person or organization, other than you, having custody of covered Covered Property will benefit from this insurance.

4. **Policy Period**

We cover "loss" or damage commencing:

a. During the policy period shown in the Declarations; and

b. Within the coverage territory.

The coverage territory is:

a. The United States of America;

b. The territories and possessions of the United States of America;

c. Puerto Rico; and

d. Canada.

5. **Inspection**

At our option, we may inspect the Covered Property and operations at any time. These inspections are for our benefit only. By our right to inspect or by our making any inspection, we make no representation that your Covered Property or operations are safe, not harmful to health or comply with any law, rule or regulation.

6. **Transfer of Your Interest in This Policy**

Your rights and duties under this policy may not be assigned without our written consent.

7. **Bankruptcy**

Bankruptcy or insolvency of the insurer or the Named Insured's estate will not relieve us of obligation under this Coverage Form.

8. **Premium Audit**

The estimated premium for this Coverage Form is based on the exposures you told us you have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

## G. DEFINITIONS

1. "Auto" means a land motor vehicle, "trailer" or semitrailer designed for travel on public roads but does not include "mobile equipment."

2. "Loading and unloading" means hoisting, lifting or moving Covered Property onto or off of your covered "auto" to or from the ground or loading docks adjacent to such covered "auto," but no more than 100 feet.

For auto haulers "loading and unloading" means moving Covered Property onto or off of, your covered "auto," but no more than 5,000 feet from the covered "auto."

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1999

3. "Loss" means direct and accidental "loss" or damage.

4. "Manufactured homes" includes modular and mobile homes.

5. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

6. "Trailer" includes semitrailer or a dolly used to convert a semitrailer into a "trailer."

7. "Warehouseman" means:

   a. A motor carrier who removes any covered property from a "trailer" for the purpose of storage, other than for the immediate transfer of covered property to another trailer as a result of accident or breakdown; or

   b. A motor carrier who, under their care, custody, and control holds any loaded "trailer" for a period of exceeding 10 calendar days.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1999

**Northland INSURANCE**

# INSTALLMENT PAYMENT CHANGE WORKSHEET ENDORSEMENTS

### (For use in conjunction with Commercial Auto General Change Endorsement)

| Policy Number and Effective Date | Endorsement Number | Effective Date of Endorsement |
|---|---|---|
| TN415191    03-10-2004 | *(required for billing)* | 05-19-2004 |

| Installment Plan (See guide for options) | 1 | Today's Date | Agent Process Date (optional) |
|---|---|---|---|
| A08 | | 06-07-2004 | 07-01-2004 |

**Do not include in installment plan. Bill endorsement in full.**    **If you elect to bill in full, stop here and send this worksheet with the General Change Endorsement to Northland.**

To calculate this endorsement's effect on future installments, complete this worksheet according to the instructions.

| | LIABILITY | PHYSICAL DAMAGE | CARGO | OTHER | TOTAL |
|---|---|---|---|---|---|
| A. PREMIUM CHANGE *(from T-064)* | ($490.00) | ($341.00) | ($379.00) | $0.00 | ($1,210.00) |
| B. # of REMAINING INSTALLMENTS | 5 | 5 | 5 | 5 | |
| C. ADD'L INSTL AMT. (A÷B) | ($98.00) | ($68.20) | ($75.80) | $0.00 | |
| 1. Drop Pennies | ($98.00) | ($68.00) | ($75.00) | $0.00 | ($241.00) |
| D. OLD INSTALLMENT AMT. (incl. prior adjustments) | $488 | $510 | $107 | $0 | |
| E. 1. NEW INSTALLMENT *(if less than $100, charge $100)* | $390 | $442 | $32 | $0 | $864 |
| 2. HANDLING FEE | | | | | $5.00 |
| 3. NEW MONTHLY CHARGE | | | | | $869 |
| F. FINAL INSTALLMENT | | | | | |
| 1. # Amended Installments -1 | 4 | 4 | 4 | 4 | |
| 2. X Installment Amount (C1) | ($392) | ($272) | ($300) | $0 | |
| 3. A - F2 | ($98) | ($69) | ($79) | $0 | |
| 4. Old Final Installment | $488 | $516 | $114 | $0 | |
| 5. New Final Installment | $390 | $447 | | | $872 |
| 6. HANDLING FEE | | | | | $5.00 |
| 7. NEW FINAL MONTH CHG. | | | | | |
| G. If the Minimum Installment of $100 applies: | | | | | |
| 1. Old remaining installments | | | | | $0 |
| 2. Plus Change Amount | | | | | $0 |
| New Remaining Balance | | | | | $0 |
| 3. # @ $100 | | | | | |
| 4. Amount @ $100 | | | | | |
| 5. G1+ A-G4 = Final Installment | | | | | |
| 6. Handling Fee | | | | | $5.00 |
| 7. Amended Final Monthly Chg. | | | | | |

____ Check here if you wish to waive charge in Escrow Deposit.

H. CHANGE TO ESCROW DEPOSIT
1. Annualized Premium for End.
2. Deposit Adjustment
3. Old Deposit Amount
4. TOTAL REVISED DEPOSIT

# GENERAL CHANGE ENDORSEMENT

This endorsement changes policy number    TN415191          Effective 05/19/2004 (12:01 A.M. Std. Time)

Issued to:  Gerald L Ruhnow                                 Agent Process Date: 07/01/2004
        dba Ruhnow Trucking                         (For Installment Bill Only)

For ☐ an additional premium,  ☒ a return premium,  ☐ no change in premium, the items checked are changed as indicated in (10).

    (1) Named "Insured" is changed.
    (2) Named "Insured's" address is changed. ☐ garaging address, ☐ mailing address
    (3) The indicated symbol(s) is (are) ☐ added, ☐ deleted, ☐ changed for the coverage(s) shown.
    (4) Coverage(s) ☐ added, ☐ deleted.
    (5) Limit(s) of Coverage changed as indicated for the coverage(s) shown.    DROP FILE
 X (6) Endorsement(s) ☒ added to, ☐ deleted from the policy.
    (7) Additional Interests ☐ added, ☐ deleted for the indicated unit.
    (8) Named lessee(s) ☐ added to, ☐ deleted from ITEM FIVE of the Declarations.    AE
    (9) The following "autos" are added* or deleted as indicated in the table below:
    (10) Other Changes.                                                  JUN 15 2004
 X (11) (6)  T-004 added for 500 mile radius.
        (11) Radius amened from unlimited to 500 miles on Units 1 & 2.

| AUTO NO. | A = Added D = Deleted | YEAR, MODEL, TRADE NAME, BODY TYPE | I.D. NUMBER | LOSS PAYEE = LP ADDITIONAL INSURED = AI |
|---|---|---|---|---|
| 1 | | 2003 Peterbilt Tractor | D590431 | |
| 2 | | 1989 Lufkin Trailer | 086082 | |
| | | | | |
| | | | | |
| | | | | |

*Additional Drivers: ☐ Yes  ☐ No. If Yes, show names and birthdates:

☒ Combined Deductible

| | AUTO NO. | LIAB | OWN/OP LIAB | PIP | MED | OWN/OP MED/PIP | UM | OTHER | STATED AMOUNT | ☒Comp ☐S.P. | DED | COLL | DED | LIMIT | DED | Theft Ded | RATE | PRE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| New/Annual Premium | 1 | 3,598 | | | 73 | | 140 | | 106,000 | 689 | 1,000 | 2755 | 1,000 | 100000 | 1,000 | 2,000 | .61 | |
| | 2 | 539 | | | | | | | 8,500 | 64 | 1,000 | 254 | 1,000 | | | | | |
| Old Annual Premium | 1 | 4,113 | | | 83 | | 140 | | 106,000 | 765 | 1,000 | 3062 | 1,000 | 100000 | 1,000 | 2,000 | 1.08 | 1,0 |
| | 2 | 616 | | | | | | | 8,500 | 71 | 1,000 | 282 | 1,000 | | | | | |
| Additional or Return Premium | | -482 | | | -8 | | | | | -68 | | -273 | | | | | | |

*For Virginia Med. = Medical Expense and Income Loss Benefits.
*For Michigan Med. = Property Protection Insurance

1486

☐ Bill in Full

All other terms and conditions of this policy remain unchanged.

| ENDORSEMENT NO. 1 | PRO RATE FACTOR .814 | TOTAL ~~ADDITIONAL~~ RETURN PREMIUM | 1,210.0 |
|---|---|---|---|

Insured's Signature (when required)

By _Debra A. Hardin_ _____ Authorized Agent

T-064 (6/03)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## RADIUS RESTRICTION

This endorsement changes the policy effective on the inception date of the policy unless a different date is indicated below.

(The following need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on       05/19/2004       at 12:01 A.M. standard time, forms a part of

Policy Number     TN415191       issued to     Gerald L Ruhnow
                                                dba Ruhnow Trucking

_____06/07/2004_____                       _____
         Date                                   Authorized Representative

The premium for this policy is based on your telling us that certain "autos" will not be used for regular and frequent trips outside a 500 mile radius of the address stated in Item One of the DECLARATIONS.

[X]  LIABILITY COVERAGE          [X]  PHYSICAL DAMAGE COVERAGE

is changed by adding the following exclusion:

The following "autos" are not covered if used for regular and frequent trips outside the radius described above:
2003 Peterbilt Tractor, S# D590431

THIS ENDORSEMENT DOES NOT APPLY TO REQUIRED OR MANDATORY COVERAGES UNDER ANY STATE NO-FAULT OR MOTOR VEHICLE REPARATIONS ACT.

T-004 (9/90)

## POLICY SUMMARY

| | | | | |
|---|---|---|---|---|
| Liability: 1,000,000 | Non-Owned: N/A | | Liab RG: _ | -0.18 |
| UM: 250,000 | Hired: If Any | | Phy Dmg RG: | -0.1 |
| UIM: 250,000 | Lessee: No | | Cargo RG: | -0.1 |
| Comb Ded: Phy Dmg Only | Gen Liab: N/A | | [] Denotes old limit/coverage | |

**CHANGED:**
1. The radius has changed from Over 500 to 301 - 500.

| UNIT # 1 | | Zone 2 | | | | Stated Amt | 106,000 | | | Rating State | IL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2003 Peterbilt D590431 [Z2500] Tractor | | | | | | | | Weight Over 45,000 | Radius | 301-500 | |
| LIMITS: | Med Pay/PIP. | 5,000 | | | | UM/UIM PREM: 34/106 | | CARGO PREM: 609 | | | |
| DEDUCTIBLES | Comp Ded: | 1,000 | Collision Ded: | 1,000 | | # OF UNITS: | 1 | TOTAL VEHICLE PREM: | | | 7,864 |

| COV | Basic | ILF | = Base | Dump Log | FM | Rad | MS | RMF | Cargo SF = -.1 OO | YD | RF | PC | Liab SF = -.18 New Ven | OTHER | Phy Dmg SF = -.1 Comm Adj | SF | = | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LIAB | 3714 | 1.71 | 6351 | 1 | 1 | 0.875 | 1 | 1 | 0.95 | 1 | 0.875 | 0.95 | 1 | 1 | 1. | 0.82 | Basic 2,566 | 3,598 |
| Own/Op | 0 | 0 | 0 | | | | | 1 | 1 | 1 | 1. | 0.95 | 1 | 1 | 1. | 0.82 | | |
| MED PAY | | | 128 | 1 | 1 | 0.875 | 1 | 1 | 0.95 | 1 | 0.875 | 0.95 | 1 | 1 | 1. | 0.82 | | 73 |
| Own/Op | | | 0 | | | | | 1 | 1 | 1 | 1. | 0.95 | 1 | 1 | 1. | 0.82 | | |
| PIP | | | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 1 | 0. | 0.95 | 1 | 0 | 1. | 0.82 | | |
| Own/Op | | | 0 | | | | | 0 | 0 | 1 | 0. | 0.95 | 1 | 0 | 1. | 0.82 | | |

| | Base | Ded | Comb Ded | SP | Dump Log | Rfer | Rad | OO | YD | RF | PC | New Ven | | OTHER | | Comm Adj | SF | | = | COMBINED DED 0 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| COMP | 1060 X5.08 | | 1 | 1 | 1 | 1 | 0.9 | 0.95 | 1 | 0.875 | 0.95 | 1 | | 1 | | 1. | 0.9 | 0.2 | | 3.25/ 689 |
| COLL | 1060 X5.08 | | 1 | | 1 | 1 | 0.9 | 0.95 | 1 | 0.875 | 0.95 | 1 | | 1 | | 1. | 0.9 | 0.8 | | 2,755 |
| RENTAL | Lmt/Days | BASE( 0 | )X MAX AMT(0 | )X DAYS( 0 | )X COMM ADJ1. | )X SF 0.9 | ) | | | | | | | | X RMF(0 | ) | | | - | |

**CHANGED:**
1. The radius has changed from Over 500 to 301 - 500.

| UNIT # 2 | | Zone 2 | | | | Stated Amt | 8,500 | | | Rating State | IL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1989 Lufkin 086082 [Z2500] Trailer | | | | | | | | Weight X-Hvy Trctr | Radius | 301-500 | |
| BODY TYPE: Flat Bed, Drop Deck, Gooseneck, Lowboy | | | | | | | | | | | |
| LIMITS: | Med Pay/PIP: | N/A | | | | UM/UIM PREM: 0/0 | | CARGO PREM: 0 | | | |
| DEDUCTIBLES: | Comp Ded: | 1,000 | Collision Ded: | 1,000 | | # OF UNITS: | 1 | TOTAL VEHICLE PREM: | | | 857 |

| COV | Basic | ILF | = Base | Dump Log | FM | Rad | MS | RMF | Cargo SF = -.1 OO | YD | RF | PC | Liab SF = -.18 New Ven | OTHER | Phy Dmg SF = -.1 Comm Adj | SF | = | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LIAB | 557 | 1.71 | 952 | 1 | 1 | 0.875 | 1 | 1 | 0.95 | 1 | 0.875 | 0.95 | 1 | 1 | 1. | 0.82 | Basic 384 | 539 |
| Own/Op | 0 | 0 | 0 | | | | | 1 | 1 | 1 | 1. | 0.95 | 1 | 1 | 1. | 0.82 | | |
| MED PAY | | | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0. | 0.95 | 1 | 0 | 1. | 0.82 | | |
| Own/Op | | | 0 | | | | | 0 | 0 | 0 | 0. | 0.95 | 1 | 0 | 1. | 0.82 | | |
| PIP | | | 0 | 0 | 0 | 0 | 1 | 0 | ·0 | 1 | 0. | 0.95 | 1 | 0 | 1. | 0.82 | | |
| Own/Op | | | 0 | | | | | 0 | 0 | 1 | 0. | 0.95 | 1 | 0 | 1. | 0.82 | | |

| | Base | Ded | Comb Ded | SP | Dump Log | Rfer | Rad | OO | YD | RF | PC | New Ven | | OTHER | | Comm Adj | SF | | = | COMBINED DED 0 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| COMP | 85 X 5.84 | | 1 | 1 | 1 | 1 | 0.9 | 0.95 | 1 | 0.875 | 0.95 | 1 | | 1 | | 1. | 0.9 | 0.2 | | 3.74/ 64 |
| COLL | 85 X 5.84 | | 1 | | 1 | 1 | 0.9 | 0.95 | 1 | 0.875 | 0.95 | 1 | | 1 | | 1. | 0.9 | 0.8 | | 254 |
| RENTAL | Lmt/Days | BASE( 0 | )X MAX AMT(0 | )X DAYS( 0 | )X COMM ADJ1. | )X SF 0.9 | ) | | | | | | | | X RMF(0 | ) | | | - | |

Policy Number:    TN415191                                    Endorse Eff:(   9/2004
Insured ID: RUHN001                                          Quote Name:  Endorsement 1
Premium Summary:

| | |
|---|---|
| COMMISSION AMOUNT: | 20.0% |
| NEW ANNUAL PREMIUM: | $ 10,317 |
| OLD ANNUAL PREMIUM: | $ 11,803 |
| DIFFERENCE IN ANNUAL PREMIUM: | $ -1,486 |
| PRO-RATE FACTOR: | 0.814 |
| TOTAL RETURN PREMIUM: | $ 1,210 |

NORTHLAND
INSURANCE
COMPANY

**COMMERCIAL AUTO WORKSHEET**

Bloomington, IL

| Rate Date: 3/10/2004 | Rate Version: ILCA015N | | Eff Date: 3/10/2004 | NIC |
|---|---|---|---|---|
| Program Version: 1.6H | Id: RUHNO01   Quote Name: Endorsement 1 | Endorsement | | |

| Name | Gerald L Ruhnow  Ruhnow Trucking | | 309-522-5875 | Date | |
|---|---|---|---|---|---|
| Mailing Address | 9655 N. 1400th Ave Osco, IL 61274 | | | 6/7/2004 9:14:14 AM | |
| Garaging Location 1 | 9655 N. 1400th Ave Osco, IL 61274 | | | | |

Email:

Prev Pol Num : TN374891

| ☒ For-Hire ☐ Not-For-Hire | Yrs In Trucking Industry 25 | Yrs Oper In This Name 6 | Yrs Prior Insurance 6 | Policy Number: TN415191 Cross Ref Num: |
|---|---|---|---|---|

| CARGO 1 | | DEDUCTIBLE:  1,000 | | THEFT DED: | 2,000 | | | LIMIT:  100,000 | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

| COMMODITY | Max Value | Base Rate X | Ded X | Theft X | Rad X | OO X | YD X | % Exp X | PC X | RF X | New Ven X | OTHER X | Comm Adj X | SF X | FINAL = PREM |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Farm Rel-Grain, Hay, Straw, Feed | 50,000 | 1.26 | 1 | 1 | 0.8 | 0.95 | 1 | 0.8 | 0.95 | .875 | 1 | 1 | 1. | 0.9 | 287 |
| Automotive-Machinery | 100,000 | 2.52 | 1 | 1 | 0.9 | 0.95 | 1 | 0.2 | 0.95 | .875 | 1 | 1 | 1. | 0.9 | 322 |

| Sub Total:   609 | X # Units:   1 | Total:   609 | Composite Rate:   .61 (Subtotal Premium divided by Highest Maximum Value) |
|---|---|---|---|

UW/PROCESSOR  Debi Hardin / Sandy Bode

## GENERAL CHANGE ENDORSEMENT

This endorsement changes policy number    TN415191    Effective 11/30/2004 (12:01 A.M. Std. Time)

Issued to:  Gerald L Ruhnow
dba Ruhnow Trucking

Agent Process Date:
(For Installment Bill Only)

For ☐ an additional premium, ☐ a return premium, ☒ no change in premium, the items checked are changed as indicated in (10).

——— (1) Named "Insured" is changed.
——— (2) Named "Insured's" address is changed. ☐ garaging address, ☐ mailing address
—·— (3) The indicated symbol(s) is (are) ☐ added, ☐ deleted, ☐ changed for the coverage(s) shown.
—·— (4) Coverage(s) ☐ added, ☐ deleted.
—·— (5) Limit(s) of Coverage changed as indicated for the coverage(s) shown.
X ——— (6) Endorsement(s) ☐ added to, ☐ deleted from the policy.
—·— (7) Additional Interests ☒ added, ☐ deleted for the indicated unit.
—·— (8) Named lessee(s) ☐ added to, ☐ deleted from ITEM FIVE of the Declarations.
—·— (9) The following "autos" are added* or deleted as indicated in the table below:
—·— (10) Other Changes.
X ——— (11) (7) T-164 for Alpine Logistics Inc. added.

**AE**

**DEC 0 3 2004**

**DROP FILE**

| AUTO NO. | A = Added<br>D = Deleted | YEAR, MODEL, TRADE NAME,<br>BODY TYPE | I.D. NUMBER | LOSS PAYEE = LP<br>ADDITIONAL INSURED = AI |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

*Additional Drivers: ☐ Yes  ☐ No. If Yes, show names and birthdates:

| | | | | | | | | | | ☐ Combined Deductible | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | LIABILITY PREMIUMS | | | | | | | | PHYSICAL DAMAGE PREMIUMS | | | | | CARGO | | | |
| AUTO NO. | LIAB | OWN/OP LIAB | PIP | MED* | OWN/OP MED/PIP | UM | OTHER | STATED AMOUNT | ☐Comp ☐S.P. | DED. | COLL. | DED. | LIMIT | DED. | Theft Ded. | RATE | PREM. |
| New Annual Premium | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| Old Annual Premium | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| Additional or Return Premium | | | | | | | | | | | | | | | | | | |

*For Virginia Med. = Medical Expense and Income Loss Benefits.
*For Michigan Med. = Property Protection Insurance

All other terms and conditions of this policy remain unchanged.

☐ Bill in Full

| ENDORSEMENT NO. | PRO RATE FACTOR | TOTAL ADDITIONAL/ | |
| 2 | | RETURN PREMIUM | - 0 - |

Insured's Signature (when required) _Debra J. Hardin_    Date _____

By _____    Authorized Agent    Date 11/30/2004    slb

T-064 (6/03)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL INSURED ENDORSEMENT

This endorsement changes the policy effective on the inception date of the policy unless a different date is indicated below.

*(The following need be completed only when this endorsement is issued subsequent to preparation of the policy.)*

This endorsement, effective on     11/30/2004          at 12:01 A.M. standard time, forms a part of

Policy Number     TN415191          issued to     Gerald L Ruhnow
dba Ruhnow Trucking

Expiration Date    03/10/2005

_____11/30/2004_____                    *Debra D. Hardin*
Date                                         Authorized Representative

If a covered auto symbol and premium are shown for Liability or Cargo in Item Four of the Declarations, coverage is amended as follows:

### A. LIABILITY

Section II - LIABILITY INSURANCE, Paragraph A.1. WHO IS AN INSURED, Part e, includes the person(s) or organization(s) for his, her, or its liability because of acts or omissions of an "insured" under Section II, Paragraph A.1. parts a, b, c, and d;

### B. CARGO

CARGO INSURANCE, Paragraph B. HOW WE WILL PAY FOR LOSSES - THE MOST WE WILL PAY, Part I. includes the person(s) or organization(s) indicated below, but only as interests may appear;

Subject to the following additional provisions:

1. No liability is assumed by that person(s) or organization(s) for the payment of any premiums stated in the policy or earned under the policy.

2. If we cancel or nonrenew the policy, a copy of the written notice of cancellation will be mailed by us to that person(s) or organization(s).

All other terms and conditions of the policy remain unchanged.

| PERSON(S) or ORGANIZATION(S) | ADDRESS |
|---|---|
| Alpine Logistics, Inc. | 8614 NE 55th Ave., Bldg C Vancouver, WA 98665 |

T-164 (11/99)

# GENERAL CHANGE ENDORSEMENT

DROP-FILE

This endorsement changes policy number    TN415191    Effective 05/19/2004 (12:01 A.M. Std. Time)

Issued to:  Gerald L Ruhnow    Agent Process Date: 07/01/2004
dba Ruhnow Trucking    (For Installment Bill Only)

For ☐ an additional premium, ☒ a return premium, ☐ no change in premium, the items checked are changed as indicated in (10).

_____ (1) Named "Insured" is changed.
_____ (2) Named "Insured"s address is changed. ☐ garaging address, ☐ mailing address
_____ (3) The indicated symbol(s) is (are) ☐ added, ☐ deleted, ☐ changed for the coverage(s) shown.
_____ (4) Coverage(s) ☐ added, ☐ deleted.
_____ (5) Limit(s) of Coverage changed as indicated for the coverage(s) shown.
__X__ (6) Endorsement(s) ☒ added to, ☐ deleted from the policy.
_____ (7) Additional Interests ☐ added, ☐ deleted for the indicated unit.
_____ (8) Named lessee(s) ☐ added to, ☐ deleted from ITEM FIVE of the Declarations.
_____ (9) The following "autos" are added* or deleted as indicated in the table below:
_____ (10) Other Changes.
__X__ (11) (6)  T-004 added for 500 mile radius.
      (11) Radius amened from unlimited to 500 miles on Units 1 & 2.

Received

JUN 29 2004

Clemens & Assoc.

| AUTO NO. | A = Added D = Deleted | YEAR, MODEL, TRADE NAME, BODY TYPE | I.D. NUMBER | LOSS PAYEE = LP ADDITIONAL INSURED = AI |
|---|---|---|---|---|
| 1 | | 2003 Peterbilt Tractor | 0590431 | |
| 2 | | 1989 Lufkin Trailer | 086082 | |
| | | | | |
| | | | | |

*Additional Drivers: ☐ Yes  ☐ No. If Yes, show names and birthdates:

C/C PROCESSING
JUL 08 2004

☒ Combined Deductible

| | AUTO NO. | LIAB | OWN/OP UAB | PIP | MED | OWN/OP MED/PIP | UM | OTHER | STATED AMOUNT | ☒Comp ☐S.P. | DED. | COLL | DED. | LIMIT | DED. | Theft Ded. | RATE | PREM. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| New Annual Premium | 1 | 3,598 | | | 73 | | 140 | | 106,000 | 689 | 1,000 | 2755 | 1,000 | 100000 | 1,000 | 2,000 | .61 | 609 |
| | 2 | 539 | | | | | | | 8,500 | 64 | 1,000 | 254 | 1,000 | | | | | |
| Old Annual Premium | 1 | 4,113 | | | 83 | | 140 | | 106,000 | 765 | 1,000 | 3062 | 1,000 | 100000 | 1,000 | 2,000 | 1.08 | 1,075 |
| | 2 | 616 | | | | | | | 8,500 | 71 | 1,000 | 282 | 1,000 | | | | | |
| Additional or Return Premium | | -482 | | | -8 | | | | | -68 | | -273 | | | | | | -379 |

*For Virginia Med. = Medical Expense and Income Loss Benefits.
*For Michigan Med. = Property Protection Insurance

All other terms and conditions of this policy remain unchanged.

ENDORSEMENT NO. 1    PRO RATE FACTOR .814    TOTAL ADDITIONAL RETURN PREMIUM  1,210.00    ☐ Bill in Full

Insured's Signature (when required) _____    Date 6/21/04

By _____    Authorized Agent    Date 06/07/2004  slb

T-064 (6/03)

JUN-22-2004  13:28    309 662 2134    98%    P.02