IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| GERALD RUHNOW and CONNIE RUHNOW,<br><br>Plaintiffs,<br>v.<br><br>LANE HEARD TRUCKING, LLC., et al,<br><br>Defendants. | *<br>*<br>*<br>*<br>*  CIVIL ACTION NO. 2:05 CV 527-F<br>*<br>*<br>*<br>* |

## SUGGESTED FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case arises out of an automobile accident that occurred on March 7, 2005, on Highway 231 in Troy, Alabama. Plaintiffs Gerald Ruhnow ("Ruhnow"), his wife, Connie Ruhnow, and his insurance company, Northland Insurance Company ("Northland") have filed suit against Lane Heard Trucking, L.L.C. ("Lane Heard Trucking"), Michael Adkins ("Adkins"), and Christy Champion ("Champion") claiming damages for personal injury, loss of consortium, and property damage as a result of this accident. The case is now before the Court on Defendant Lane Heard Trucking's motion for summary judgment as to all stated claims made against it.

The Court has fully considered the pleadings and other documents in the record, together with the written presentations of the parties. The Court concludes that based upon the undisputed facts and the controlling law set forth below, Defendant Lane Heard Trucking is entitled to summary judgment as a matter of law on every count of the Plaintiff's Second Amendment to the Complaint ("Second Amendment") [Doc. 31] and the Amended Complaint filed by Northland ("Northland's Complaint") [Doc. 41].

## **FINDINGS OF FACT**

The Court finds that the following material facts are undisputed:

1. Lane Heard Trucking is a small trucking operation owned and operated by Lane and Marilyn Heard. (*See* Marilyn Heard Dep. at 7, Ex. "A")[1]. In March 2005, Lane Heard Trucking owned and operated five trucks and employed four drivers. (*Id.* at 10). Lane Heard Trucking was then and still is devoted solely to delivering furniture from Kevin Charles Furniture in New Albany, Mississippi to City Furniture in Tamarac, Florida, just outside of Miami. (*Id.* at 8-9).

2. In October, 2004, Lane Heard Trucking hired Michael Duke as a driver. (*See id.* at 21). Mr. Duke was recommended to the Heards as a good driver. (*Id.* at 19, 69; Lane Heard Dep. at 44, 62-63, Ex. "B"). The Heards believed Mr. Duke to be a good driver, and they never had any trouble with Mr. Duke or any knowledge of Mr. Duke having any traffic tickets or citations. (*See* Lane Heard Dep. at 37). The Heards also do not know or believe that Mr. Duke was on any kind of drugs or medications. (Marilyn Heard Dep. at 60). Further, Lane Heard had Mr. Duke perform a road test, which he successfully completed. (Lane Heard Dep. at 24-25).

3. On March 7, 2005, Michael Duke left New Albany to deliver a load to Tamarac. (*See generally* Lane Heard Dep. at 20-22). Mr. Duke was driving a 2001 Freightliner owned by Lane Heard Trucking (Lane Heard Dep. at 12) with an attached trailer leased by Kevin Charles Furniture from Darrell Duffy. (*Id.* at 54-55). Regarding the Freightliner, Mr. Heard performed all needed maintenance on

---

[1] All referenced exhibits were submitted with Lane Heard Trucking's Motion for Summary Judgment.

      this truck, including changing the oil, tires, turbo injectors, and brakes. (Lane Heard Dep. at 12-14).

4.    At approximately 7:15 p.m., on March 7, 2005, there was a collision between a Pontiac Grand Am, driven by Christy Champion, and a motorcycle, driven by Michael Adkins, on Highway 231 in Troy, Alabama. (*See* Accident Report, included as part of the Department of Public Safety Traffic Homicide Investigation Report ("Investigation Report"), Ex. "C"). While it is disputed who caused this accident and the details surrounding the accident, these disputed facts are not material to the present motion. What is material and undisputed is that Mr. Adkins' motorcycle was left lying in the right-hand southbound lane in the way of oncoming traffic. (Adkins Dep. at 16-17, Ex. "D"; Champion Dep. at 20-21, Ex. "E"; Richardson Dep. at 8-12, Ex. "F"; Accident Report, included as a part of the Investigation Report).

5.    Unfortunately, Michael Duke died as a result of this accident so we can never know exactly what happened from his perspective. However, witnesses to the accident help complete the picture of what happened. Just after the collision between Mr. Adkins and Ms. Champion, Gene Richardson was traveling in the left-hand southbound lane and passed by the motorcycle. Mr. Richardson testified:

> Q: All right. Can you please describe for me, and actually more importantly the jury, exactly what you observed. And if you can give me as much detail as possible, that would be great.
>
> A: Okay. I was traveling down the highway and it was very, very dark. And what I was looking for I was

>convinced we had passed. I decided to get into the left lane and find the first place I could to turn around.
>
>And right after I got into the left lane of the highway, my wife said, "What's that?" **And I glanced over and I could see on the, on the road, and it was just about the time I passed it before I could even see it, and it was a motorcycle laying in the road.**
>
>And I told her, I said, "Well, that's a motorcycle." **I was proceeding about 55 miles an hour.**
>
>So I started slowing up. And we were discussing, I said, "Maybe I need to get stopped so we can see if we can help somebody get that off the road."
>
>About that time I looked in the rear view mirror. By this time I was – I had just slowed up. I hadn't really stopped. I saw the truck headlights coming in that lane. **And I told my wife, I says, "Look, he's not going to see that motorcycle."** And about that time he hit the motorcycle. By this time I had slowed almost to a complete stop and I was probably a quarter of a mile down the road."
>
>And I watched in the rear view mirror as the truck ran over the motorcycle, drug the motorcycle, and it appeared he was out of control. The motorcycle was showering a lot of sparks. And before he went very far, he started going towards the other side of the road. The motorcycle burst into flames. And within a second, the truck then burst into flames and went on across the road.
>
>I was watching this in my rear view mirror. I did not see the other truck that apparently he hit, as I learned later. But I did see that when he got to the other side of the road, then there was another explosion of apparently the other truck and a huge ball of fire and flames that looked like about 50 feet high. And that's what I saw.

(Richarson Dep. at 8-10) (emphasis added).

6. When questioned further about his description of the road as "very, very dark" (*Id.* at 11), he stated:

- 4 -

> Q: Okay. And is it your testimony that you did not see the motorcycle until you were passing it?
>
> A: That's correct. **It was very dark and you could not see it.** The motorcycle apparently was a black or a very dark color. And I only saw it when I was just close enough that the lights kind of caught it. Probably 20, 30 feet at the most in front of me.

(Richardson Dep. at 11-12). Mr. Richardson also testified

> Q: So once you passed the motorcycle, is it your testimony that you observed then headlights coming from a truck towards the motorcycle?
>
> A: Not immediately, but I started slowing down and was at – and I mentioned to my wife that **maybe we should stop and see if we could help – if – get that motorcycle out of the road because nobody can see it. And anybody in the right lane would undoubtedly hit it.**

(Richardson Dep. at 13) (emphasis added). Mr. Richardson observed that when the truck hit the motorcycle "within just a second or two, the motorcycle burst into flames. And then within a second or so later, the truck burst into flames. By this time it was about halfway over towards the other side of the road." (Richardson Dep. at 14). Mr. Richardson also testified that he was 20 to 30 feet "[a]t the very most. I know it was very, very quickly that I saw it and I was past it. **And I know that if I had been in the right lane, there is no way I could have avoided hitting it** at still pretty high rates of speed." (Richardson Deposition at 41) (emphasis added).

7. Mr. Richardson did not witness the actual collision between Mr. Duke's truck and the truck driven by the plaintiff, Gerald Ruhnow, but another witness, Randall Jackson, did. Mr. Jackson described the incident:

A:   Okay. Well, the – I was traveling southbound on Highway 231, roughly, about three to four miles south of Troy, Alabama. It was, I guess, about – I want to say around nine – between nine and nine-thirty in the evening. It was raining. It wasn't a downpour, but it was raining and it was dark.

As I came up the hill, a truck passed me. I guess that was the truck that I guess your client was in. We were –

Q:   Let me interrupt you. When you say my client, do you mean Mr. Dukes, the driver of the truck?

A:   The driver – I guess it was a white Freightliner.

Q:   Okay.

A:   I'm assuming that was the driver who was killed. I'm not – I didn't know who was in what truck at the time.

But the truck passed me. I was doing about 45 miles an hour. **He was probably doing about between 50 and 55 going up the hill.** As he passed me, we topped the hill. He was probably, I want to say, little bit shorter than the length of a football [sic] in front of me, in between 75 and 50 yards in front of me.

I saw sparks come off the back of his truck. I assumed that he had blown a tire, so I slowed down to give him, you know, room to do whatever needed to be done to get his truck, you know, off the side of the road or whatever happened –whatever was going to happen.

Right after I saw the sparks, I would say about four to five seconds after that, his truck took an extremely hard turn to the left, which actually took him into oncoming traffic. So he crossed from the southbound lane to the northbound side of 231. This took place right at – I believe it was a Pritchard's gas station, just to the right, and that's the landmark that I remember because it was right there at that gas station.

When the truck took a hard turn to the left, it was almost as though he just turned the truck extremely hard, is what it appeared to me. I didn't know what was going on. The trailer started to turn to go over and land on its side,

- 6 -

>   and just as – just before the trailer hit, a truck that was traveling in the northbound side of 231 made impact with the truck that just crossed over from the southbound to northbound side. The two trucks hit, and there was, you know, fire almost instantaneously. . .

(Jackson Dep. at 7-11, Ex. "G"). The speed limit on Highway 231 is 55 mph. (*Id.* at 68; Lane Heard Dep. at 37).

8.  Mr. Jackson testified that the oncoming truck made impact with Mr. Duke's vehicle "right about or just behind the passenger side door of Michael [Duke's] truck." (Jackson Dep. at 22). Mr. Jackson had the opportunity to observe Mr. Duke's driving for approximately 2 miles before the accident and he testified that there was nothing unusual about his driving. (*Id.* at 28).

>   Q:   Did you notice him do anything unusual at the time?
>
>   A:   No. Huh-uh. He was – we were just, you know, driving along. I mean, there wasn't any – any type of sudden moves that he was making or anything to think that he was sleepy or, you know, because – I mean, wiggle or moving around. He just was driving along, just like I was.
>
>   Q:   So you didn't have any reason to believe he was –
>
>   A:   No.
>
>   Q:   -- doing anything incorrectly?
>
>   A:   No. I mean, not that I witnessed, no, not at all.

(Jackson Dep. at 28-29).

9.  The undisputed facts are, as follows: Mr. Duke approached this dark area of Highway 231, Mr. Adkins' maroon and black motorcycle was lying in the road from the previous accident with Ms. Champion's vehicle. (*See* Jackson Dep. at 69; Adkins Dep. at 28-29, 45; Lane Heard Dep. at 30). Ms. Champion's vehicle

was pulled over in the far right turn lane with no flashers. (Champion Dep. at 19, 69). There is absolutely no evidence to suggest that Mr. Duke would have been able to see the motorcycle in the roadway or that he could have avoided this accident. In fact, the evidence is to the contrary. Ms. Champion testified:

> Okay. As I'm walking back, I could see the motorcycle. But, I mean, as far as for the truck driver, from his standpoint, it was too dark.

(Champion Dep. at 32). Moreover, a traffic homicide investigation was completed and the investigating officer, Trooper Kevin Cook concluded:

> Mr. Duke was operating the motor vehicle in complete compliance with all the motor vehicle laws governing the state of Alabama.

(Investigation Report).

## **CONCLUSIONS OF LAW**

The Court concludes that Lane Heard Trucking is entitled to summary judgment as a matter of law on each of Plaintiffs' claims.

The standard for consideration of a summary judgment motion is well established. A court may grant summary judgment in the moving party's favor if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In further describing this standard, this Court has stated as follows:

> The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary

> judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317,
> 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986))(footnote omitted).

*U.S. Aviation Underwriters, Inc. v. Yellow Freight System*, 296 F.Supp. 2d 1322, 1330 (S.D. Ala. 2003).

I. **LANE HEARD IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER LAW ON PLAINTIFFS' CLAIMS THAT LANE HEARD WAS NEGLIGENT.**

Plaintiffs claim that "Lane Heard Trucking, LLC, acting by and through its agent/employee, Michael Duke, negligently caused or negligently allowed the tractor-trailer being operated by its driver. . . ." (Second Amendment [Doc. 31] at ¶ 7; *see also* Northland's Complaint Counts Two and Three). In order for a plaintiff to establish a claim of negligence or wantonness, they must show that the defendant owed a duty to the plaintiff; that the defendant breached such duty to the plaintiff; and that the breach was the proximate cause of some injury to the defendant. *See Armstrong Bus. Svcs., Inc. v. AmSouth Bank*, 817 So. 2d 665, 679 (Ala. 2001). The law of Alabama places "the burden…on the plaintiff to establish negligence by affirmative proof." *Mobile City Lines, Inc. v. Proctor*, 130 So. 2d 388, 392 (Ala. 1961). "[N]egligence will not be inferred by the mere showing of an accident...." *Id.*

In the present case, Plaintiffs have done nothing more than show that an accident occurred. There is no evidence to suggest that Michael Duke breached any duty or was the proximate cause of this accident. In fact, the evidence suggests otherwise; it suggests that Mr. Duke was traveling at the speed limit and was suddenly faced with an unexpected and unavoidable motorcycle in the roadway. It was the motorcycle obstruction that caused the accident, and there is simply no evidence that Mr. Duke could have avoided it. In fact, the testimony of both Christy Champion and Gene Richardson was that Mr. Duke could not have seen the motorcycle in order to avoid it. (*See* Champion Dep. at 32; Richardson Dep. at 11-

13; 17-18; 41). As such, because negligence cannot be attributed to Mr. Duke, the Court is satisfied that Lane Heard Trucking is entitled to judgment as a matter of law on the negligence claim.

### II. LANE HEARD IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW ON PLAINTIFFS' WANTONNESS CLAIMS.

Plaintiffs also claim that "Lane Heard Trucking, LLC, wantonly caused or wantonly allowed its employee/agent, Michael Duke, to operate its tractor-trailer in a wanton manner . . ." (Second Amendment [Doc. 31] ¶9). "Wanton conduct" has been defined by the Alabama Supreme Court as:

> [The] doing of some act or something with reckless indifference to the consequences of said act, or. . .a failure or omission to do something, with reckless indifference to the consequences of such failure or omission, that is, that the party acting or failing to act is conscious of his conduct, and even though without any actual intent to injure is aware from his knowledge of existing circumstances and conditions that his conduct would probably result in injury to another or in damage to his property.

*Armstrong*, 817 So. 2d at 679-80 (quoting *Weatherly v. Hunter*, 510 So. 2d 151, 152 (Ala. 1987) (quoting *W.T. Ratliff Co. v. Purvis*, 291 So. 2d 289 (Ala. 1974)); *see also* ALA. CODE § 6-11-20(b)(3)(defining wantonness as "conduct which is carried on with a reckless or conscious disregard of the rights or safety of others"). Wantonness requires a more aggravated state of mind than does negligence; wantonness requires an intent to act, or a conscious omission of duty, with knowledge of the circumstances and with a reckless disregard of the consequences. *Lynn Strickland Sales & Serv., Inc. v. Aero-Lane Fabricators, Inc.*, 510 So. 2d 142, 145-146 (Ala. 1987), overruled on other grounds, *Alfa Mut. Ins. Co. v. Roush*, 723 So. 2d 1250, 1252 (Ala. 1998).. In other words, "[i]mplicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with

- 10 -

consciousness, that the doing or not doing of some act will likely result in injury." *Yamaha Motor Co., Ltd. v. Thornton*, 579 So.2d 619, 623 (Ala. 1991)(quoting *Central Alabama Electric Cooperative v. Tapley*, 546 So. 2d 371, 379 (Ala. 1989)(emphasis omitted). "Reckless" is defined as "careless, heedless, inattentive; indifferent to the consequences. . . marked by lack of proper caution: careless of consequence. . .having no regard for consequences; uncontrolled; wild." *Gordon v. Schneider Nat'l Carriers, Inc.*, 951 F.Supp. 207, 210 (M.D. Ala. 1996)(internal citations omitted). "Conscious" is defined as "perceiving, apprehending, or noticing with a degree of controlled thought or observation: capable of or marked by thought, will, design, or perception." *Berry v. Fife*, 590 So. 2d 884, 885 (Ala. 1991).

In *Ex parte Anderson*, 682 So. 2d 467 (Ala. 1996), the Alabama Supreme Court reversed the Court of Civil Appeals and affirmed the Circuit Court's summary judgment in favor of defendant, Anderson, on a wantonness claim charged when Anderson attempted to make a left-hand turn crossing in front of an oncoming lane of traffic, in a light rain, despite consciously recognizing that her vision was partially blocked by another vehicle. The Supreme Court held that "[a]lthough Anderson may have been negligent in turning left while her view of the oncoming traffic was blocked, we do not believe that this evidence is sufficient to prove that she was guilty of 'wanton conduct,'...we find no substantial evidence that...Anderson acted 'with knowledge of danger, or with consciousness that the doing [of the act would] likely result in injury." *Id.* at 470; *see also Tolbert v. Tolbert*, 2004 WL 2260379, at *10 (affirming summary judgment on a wantonness claim arising from an automobile accident where evidence did not establish "more than a showing of some form of inadvertence on the part of the driver" or that it rose to the required showing of "some degree

of consciousness on the part of the defendant that injur[ies] are likely to result from his act of or omission[s]").

Similarly, in *George v. Champion Ins. Co.*, 591 So. 2d 852 (Ala. 1991), the Alabama Supreme Court affirmed summary judgment dismissing plaintiff's wantonness claim. The plaintiff was a minor passenger injured when the vehicle she was riding in ran a red light and collided with another vehicle. The facts were:

> It was Sunday afternoon and a clear day. The occupants of the car were engaged in conversation. As the car approached the intersection. . . , [the driver] saw that the traffic light was green. [The driver] glanced back in conversation. When [the driver] looked forward, the traffic light was red. . . [The driver] tried to put her foot on the brake pedal, but missed and hit the clutch pedal. She ran the red light, and her [vehicle] collided with a vehicle that was turning left in front of her.

*Id.* at 854. The Court concluded that "the facts of this case, when viewed in a light most favorable to the plaintiff, do not provide substantial evidence of the requisite elements of wantonness on the part of the driver. . . .While the facts show inadvertence,. . . they do not amount to wantonness. . . ." *Id.*

It is clear to this Court that Michael Duke was not negligent and certainly did not have the requisite state of mind to have been wanton. In fact, there is no evidence to even establish inadvertence on the part of Mr. Duke as there was in *Anderson* and *George*. As such, because wantonness cannot be attributed to Mr. Duke, the Court is satisfied that Lane Heard Trucking is entitled to judgment as a matter of law on the wantonness claim.

### III.    LANE HEARD IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW ON PLAINTIFFS' CLAIM OF NEGLIGENT ENTRUSTMENT.

Plaintiffs claim that Lane Heard Trucking "negligently entrusted the operation of the tractor-trailer being operated by Michael Duke to that operator, employee/agent despite

knowing or having reason to know of his driving ability and condition which presented hazards to the public . . . ." (Second Amendment [Doc. 31] ¶10). In order for a plaintiff to establish a claim of negligent entrustment they must establish an entrustment; to an incompetent; with knowledge that he [or she] is incompetent; proximate cause; and damages. *Pryor v. Brown & Root USA, Inc.*, 674 So. 2d 45, 51 (Ala. 1995) (quoting *Mason v. New*, 475 So. 2d 854, 856 (Ala. 1985)). Further, "the rule has been established that an entruster is not liable for injury resulting from negligent entrustment of a vehicle to an incompetent driver unless the injury is proximately caused by his legal culpability . . . 'Hence any consideration of the owner's liability must involve also a consideration of the conduct of the [entrustee] and his legal culpability.'" *Bruck v. Jim Walter Corp.*, 470 So. 2d 1141, 1145-46 (Ala. 1985) (quoting *Rush v. McDonnell*, 214 Ala. 47, 52, 106 So. 175, 178 (1925)).

In the present case, there is no evidence to establish legal culpability (i.e. negligence or wantonness) on the part of Mr. Duke. For this reason alone, the Court concludes that Plaintiffs' claim for negligent entrustment fails as a matter of law. However, assuming *arguendo* that Mr. Duke had been negligent or wanton, there is simply no evidence to establish that Lane Heard Trucking had knowledge of Mr. Duke being anything but a capable, competent driver. (*See* Lane Heard Dep. 24-25, 37, 44, 62-63; Marilyn Heard Dep. at 60, 69). As such, the Court is satisfied that Lane Heard Trucking is entitled to judgment as a matter of law on the negligent entrustment claim.

**IV.     LANE HEARD IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW ON PLAINTIFFS' NEGLIGENT HIRING, TRAINING OR SUPERVISING CLAIM.**

In paragraph 11 of their Second Amendment, Plaintiffs allege that Lane Heard Trucking negligently trained, evaluated, monitored, and supervised its employee, Mr. Duke. Alabama recognizes the torts of negligent hiring, negligent supervision, and negligent training. *Poplin v. Bestway Express*, 286 F. Supp. 2d 1316, 1318 (M.D. Ala. 2003); *see also CP & B Enters., Inc. v. Mellert*, 762 So. 2d 356, 362 (Ala. 2000). Alabama law defines these claims as follows:

> In the master and servant relationship, the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him. Liability depends upon its being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge. It is incumbent on the party charging negligence to show it by proper evidence. This may be done by showing specific acts of incompetency and bringing them home to the knowledge of the master, or by showing them to be of such nature, character, and frequency that the master, in the exercise of due care, must have them brought to his notice. While such specific acts of alleged incompetency cannot be shown to prove that the servant was negligent in doing or omitting to do the act complained of, it is proper, when repeated acts of carelessness and incompetency of a certain character are shown on the part of the servant to leave it to the jury whether they would have come to his knowledge, had he exercised ordinary care.

*Lane v. Cent. Bank of Alabama, N.A.*, 425 So. 2d 1098, 1100 (Ala. 1983) (quoting *Thompson v. Harvard*, 235 So. 2d 853 (1970)); *see Armstrong*, 817 So. 2d at 682; *see also Sanders v. Shoe Show, Inc.*, 778 So. 2d 820, 824 (Ala. Civ. App. 2000). These claims are often lumped together and referred to merely as negligent supervision. *See generally Sanders*, 778 So. 2d at 824. These causes of action are predicated on the underlying tortious conduct of an employee. *See Stevenson v. Precision Standard, Inc.*, 762 So. 2d 820, 824 (Ala. 1999).

Therefore, in order to succeed on these claims, the plaintiff must establish that Mr. Duke was negligent in his operation of his vehicle. As stated in section I, there is no factual support for the plaintiff's claim of negligence. Therefore, the court is satisfied that Lane Heard Trucking is entitled to summary judgment on the plaintiffs' negligent training, evaluating, monitoring, and supervision claims.

### V. LANE HEARD IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW ON PLAINTIFFS' LOSS OF CONSORTIUM CLAIM.

Plaintiff Connie Ruhnow asserts a loss of consortium claim against Lane Heard Trucking based on its negligence and/or wantonness. (Second Amendment [Doc. 31] ¶16). A plaintiff's consortium claim is a purely derivative claim and is completely dependant upon a plaintiff's prevailing upon the other substantive counts. *See Davis v. Wal-Mart Stores, Inc.*, 64 F. Supp. 2d 1176, 1181 (M.D. Ala. 1999) (consortium is a derivative claim); *Ex parte N.P.*, 676 So. 2d 928, 930 (Ala. 1996) ("a claim for loss of consortium is a derivative claim"). "Proof of the underlying tort is a necessary element of an action for loss of consortium." *Johnson v. Wal-Mart Stores, Inc.*, 987 F.Supp. 1376, 1397 (M.D. Ala. 1997). Because Plaintiffs' negligence and wantonness claims fail as a matter of law, the consortium claim likewise fails and the Court is satisfied that Lane Heard Trucking is entitled to judgment as a matter of law on the consortium claim.

### VI. PLAINTIFF IS NOT ENTITLED AS A MATTER OF LAW TO RECOVER PUNITIVE DAMAGES AGAINST DEFENDANT LANE HEARD.

Alabama Code §§ 6-11-20 & 27 expressly limit a principal's liability for punitive damages. Section 6-11-20 generally limits punitive damages to intentional or deliberate acts of "oppression, fraud, wantonness, or malice," which must be established by "clear and

convincing evidence." ALA. CODE § 6-11-20(a). Section 6-11-27 expressly limits the imposition of vicarious liability for the punitive damages to situations in which the principal is either negligently employed or continued to employ the agent guilty of the alleged misconducts; participates in, authorizes or ratifies such misconduct; or received some benefit from the misconduct. *See e.g., Northwestern Mut. Life Ins. Co. v. Sheridan*, 630 So. 2d 384 (Ala. 1993)("It must be observed that § 6-11-27 modifies the common law rule of vicarious liability by requiring proof of a higher degree of culpability on the part of the principal."); *see also* ALA. CODE § 6-11-27(a).

The only claim made by Plaintiffs that even arguably allows the imposition of punitive damages against Lane Heard Trucking, pursuant to Alabama Code § 6-11-20, is Plaintiffs' wantonness claim. However, as established in section II, this is due to be dismissed as a matter of law. As such, there is no claim that can support a punitive damage award. Therefore, the Court is satisfied that the Plaintiffs may not recover punitive damages as a matter of law.

For all of the foregoing reasons, Defendant Lane Heard Trucking's Motion for Summary Judgment is hereby GRANTED.

DONE this _____ day of _____, 2006.

_____
UNTIED STATES DISTRICT JUDGE