IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| GERALD RUHNOW; CONNIE RUHNOW, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CIVIL ACTION NO. CV 2:05-cv-527-F ) |
| LANE HEARD TRUCKING, LLC., et al., | ) ) ) |
| Defendants. | ) ) |
| NORTHLAND INSURANCE CO., | ) ) |
| Intervener, | ) ) |
| v. | ) ) |
| LANE HEARD TRUCKING, LLC., et al., | ) ) ) |
| Defendants. | ) |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

COME NOW the plaintiffs, in the above-styled cause, and hereby submit the following brief in support of their opposition to the Motion for Summary Judgment filed by defendant Land Heard Trucking, LLC. Plaintiffs submit that genuine issues of material fact do exist and that defendant's Motion for Summary Judgment is due to be denied.

## STATEMENT OF FACTS

1. This wreck occurred on March 7, 2005 on US 231 South. (Randall Jackson deposition, p. 6, Exhibit "A").

2. At the time of this wreck it was dark, but the visibility was "excellent." (Michael Adkins deposition, p. 31, Exhibit "B").

3. A wreck occurred between Michael Adkins driving a motorcycle and Christy Champion driving her automobile. This wreck occurred in the right hand, southbound lane of 231. (Christy Champion deposition, pp. 15, 16, Exhibit "C").

4. Following the impact between Champion and Adkins, Mr. Adkins' motorcycle remained in the right hand southbound lane of the highway, and Ms. Champion pulled her vehicle into the farthest right hand turn lane. (Champion deposition, p. 19).

5. The Champion and Adkins vehicles were approximately 50 feet from Pinkard's Truck Stop/gas station located on the right side of Highway 231. (Adkins' deposition, pp. 22, 33,). The lights were on at Pinkard's. (Champion deposition, pp. 31, 32).

6. It was not raining at this time. (Adkins' deposition, p. 28). After Ms. Champion pulled her car over and stopped, both her headlights and taillights were on and working. (Adkins' deposition, pp. 18, 28; Champion deposition, pp. 69, 85).

7. The Adkins' motorcycle was lying in the right hand southbound lane near the broken center line approximately 10-12 feet behind the Champion vehicle. (Adkins' deposition, pp. 15, 16).

8. After the motorcycle came to a complete stop, it was lying on its side with its taillight headed essentially due north in the direction from which the defendant's truck was approaching and its headlights facing essentially due south towards Dothan. The motorcycle's headlight and taillight were on and operating as it lay in the road prior to impact. (Adkins' deposition, pp. 17, 18, 28).

9. Following the impact between Adkins and Champion and after Ms. Champion had pulled to the side of the road, Mr. Adkins got up and walked over to where Ms. Champion was standing outside of her vehicle. Ms. Champion has testified it was approximately one minute from the time she and Mr. Adkins spoke to one another before she saw the defendant's truck come into view. (Champion deposition, pp. 24, 25).

10. The highway in the area where this wreck occurred is level and straight. Coming south toward the point of impact, the road crests and levels out approximately 450 feet from the point of impact. The point of impact can be seen from the crest of the hill approximately 450 feet north. (Adkins' deposition, p. 89).

11. Ms. Champion lived near the wreck scene, and travels in that area often. She has testified that a vehicle traveling south such as the defendant's vehicle could

have seen her car from the crest of the hill. (Champion deposition, pp. 11, 12, 32, 33).

12. The headlights were turned on and operating on the defendant's truck as it approached the point of impact with the motorcycle. (Champion, p. 84; Arnold G. Richardson deposition, pp. 9, 21, 26, Exhibit "D").

13. The motorist behind the defendant's truck has reported that he was able to see the motorcycle's lights <u>prior to the impact</u> between the truck and the motorcycle. (Adkins' deposition, pp. 23, 24).

14. Ms. Champion observed the defendant's truck approaching as it crested the hill. (Champion deposition, pp. 23, 24).

15. Witness Richardson saw the truck's headlights in his rear-view mirror from approximately 1/4 of a mile away. (Richardson deposition, pp. 9, 21, 26). Witness Richardson, however, did not see, at any time, the Champion vehicle pulled off to the side of the road. (Richardson deposition, pp. 22, 24).

16. The defendant's truck was observed prior to and at impact by at least four people. Those witnesses have testified that the defendant did not apply his brakes or take <u>any evasive action</u> prior to the impact between the defendant's truck and the Adkins' motorcycle. (Jackson deposition, p. 49; Champion deposition, p. 31; Richardson deposition, p. 21; Adkins' deposition, p. 17).

4

17. Mr. Adkins has testified that at the time of the impact between the truck and the motorcycle, the defendant's truck was traveling approximately 65 - 70 mph. (Adkins' deposition, p. 19). The speed limit where the wreck occurred is 55 mph. (Adkins' deposition, p. 9; Jackson deposition, p. 68).

18. At the time this wreck occurred, it was not raining but the roads were wet. (Adkins' deposition, pp. 27, 28).

After impact with the motorcycle, the motorcycle became lodged under the front portion of the truck and the defendant's truck was forced to swerve left into the northbound lanes. Plaintiff Gerald Ruhnow was traveling north and was struck by the defendant's vehicle. The plaintiff was seriously and permanently injured.

## ARGUMENT

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only where there is no genuine issue of material fact. If a party opposing summary judgment produces sufficient evidence so that a fact finder could reasonably find for that party, summary judgment is inappropriate. See *Walker v. Darby*, 911 F. 2nd 1573, 1577 (11th Cir. 1990). On a Motion for Summary Judgment, the Court must review the record, and all its inferences, in the light most favorable to the non-moving party. *Williams v. Vitro Services Corporation*, 144 F. 3rd 1438 (11th Cir. 1998) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8LED 2nd 176 (1962).

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S NEGLIGENCE AND WANTONNESS CLAIM IS DUE TO BE DENIED

The defendant has asked this Court to find as a matter of law that the evidence in this case does not present a genuine issue of material fact as to the defendant's negligence. Even the defendant does not argue this position very hard, and, of course, the Motion for Summary Judgment as to plaintiff's negligence claim should be denied. There are clear issues of fact which a jury should be allowed to decide. The defendant bases its entire argument on the fact that two witnesses to the accident have opined that they do not believe the truck driver could have seen the motorcycle. The evidence as to what Michael Dukes could and should have seen on the night of this wreck creates more than a question of fact.

It is the plaintiffs' position that this wreck was absolutely avoidable and that defendant was clearly negligent and perhaps wanton. The evidence in this case would allow a fact finder to determine that the speed limit in this location was 55 mph (Adkins' deposition, p. 9; Jackson deposition, p. 68); that the defendant was traveling 65 - 70 mph on wet roads (Adkins' deposition, pp. 19, 27, 28); that the truck driver had clear visibility for close to 500 feet (Adkins' deposition, p. 89); that the incident between Adkins and Champion had occurred and that the motorcycle was lying in the road and Champion's vehicle beside the road several minutes prior to the truck approaching the point of impact; that if he was paying attention, the truck driver

6

should have seen a car parked on the side of the road with headlights and taillights on (Champion deposition, pp. 11, 12, 32, 33); that a motorcycle was in the middle of the road with its headlights and taillights on (Adkins' deposition, pp. 17, 18, 28); that the motorcycle could have and should have seen and, in fact, was seen by the driver behind the defendant's truck. (Adkins' deposition, pp. 23, 24); and that as the truck driver approached the car and motorcycle over a distance of some 500 feet, the truck driver did not apply his brakes and took <u>no evasive action</u> (Jackson deposition, p. 49; Champion deposition, p. 31; Richardson deposition, p. 21; Adkins' deposition, p. 17).

This scenario not only permits the inference, but almost demands the conclusion that the defendant negligently failed to see a dangerous situation in front him that was clearly there to be seen. The witness upon whom the defendant rests a great portion of its defense has testified that visibility was good enough for him to see the truck's headlights from a <u>quarter of a mile away</u> (Richardson deposition, pp. 9, 21, 26). Alabama law places a duty upon the driver of a motor vehicle to keep a lookout. In fact, Alabama law assumes that a driver sees that which is there to be seen.

> . . . A motor vehicle driver is chargeable with knowledge
> of what a prudent and vigilant operator would have seen,
> and is negligent if he fails to discover a vehicle which he
> could have discovered in time to avoid the injury.

*Alabama Pattern Jury Instruction, 26.08*

The elements of a negligence claim are a duty, a breach of that duty, causation, and damage. *AALAR Limited, Inc. v. Frances*, 716, So.2nd 1141 (Ala. 1998); *Armstrong Business Services, Inc. v. AmSouth Bank*, 817 So.2nd 665 (Ala. 2001). The evidence in this case is more than sufficient to allow a jury to find that the defendant's conduct was negligent resulting in the injuries suffered by the plaintiffs.

Defendant states in its brief that Mr. Duke was "suddenly faced with an unexpected and unavoidable motorcycle in the roadway." The Sudden Emergency Doctrine is not applicable here. The doctrine only applies in situations in which a defendant, without fault of his own, is faced with a sudden emergency. The Sudden Emergency Doctrine does not apply if the emergency is created by the defendant's own negligent or otherwise tortuous conduct. See *Burns v. Martin*, 589 So.2nd 147 (Ala. 1991). Here, the fact finder could easily determine that any "emergency" was caused or contributed to by this defendant's failure to exercise reasonable care and his failure to see what was there to be seen as he approached the motocycle.

The Alabama Supreme Court has defined wanton conduct as

> A failure or omission to do something with wreckless indifference to the consequences of such failure or omission, that is that the party acting or failing to act is conscience of his conduct, and even though without any actual intent to injure is aware from his knowledge of <u>existing circumstances and conditions</u> that his conduct would probably result in injury to another or in damage to his property.

(Emphasis added). *Weatherly v. Hunter*, 510 So.2nd 151 (Ala. 1987) as quoted in *Armstrong Business Services, Inc. v. AmSouth Bank*, 817 So.2nd 665 (Ala. 2001).

Plaintiffs summit that the facts in this case as set forth above, are sufficient to allow a fact finder to determine that Michael Duke was traveling on a wet highway 10 - 15 miles above the speed limit; that he saw at least one vehicle beside the road with two individuals standing next to the lane of travel in which he was driving and that he took no action to slow down or move to the left lane until it was too late. The fact that we can not ask Mr. Duke what he actually saw does not preclude a wantonness claim. Otherwise, a wanton claim could never be maintained in cases in which a defendant driver is killed in the wreck. To the contrary, Alabama law places a duty on every driver to see what would have been seen by a prudent and vigilant operator of motor vehicle. For purposes of this summary judgment motion, Michael Duke should be charged with having seen that which the evidence supports he could and should have seen. The defendant's Motion for Summary Judgment as to wantonness should be denied.

Plaintiffs hereby adopt and incorporate by reference herein the brief filed by Intervener Northland Insurance Co. in opposition to defendant's Motion for Summary Judgment.

## NEGLIGENT ENTRUSTMENT AND NEGLIGENT HIRING, TRAINING OR SUPERVISING CLAIMS

Plaintiffs do not contest defendant's Motion for Summary Judgment on the claims of negligent entrustment and negligent hiring, training or supervising.

## LOSS OF CONSORTIUM

Plaintiffs submit that the loss of consortium claim by plaintiff Connie Ruhnow is a viable claim and that defendant's Motion for Summary Judgment as to such claims is due to be denied. As admitted by the defendant, if the Motion for Summary Judgment is denied as to plaintiff's negligence and/or wantonness claims, then the Motion for Summary Judgment as to the loss of consortium claim is also due to be denied. As shown above, the evidence in this case dictates a denial of the Motion for Summary Judgment as to plaintiff's negligence claim as well as to the wantonness claim. As such, the Motion for Summary Judgment as to loss of consortium is also due to be denied.

## CONCLUSION

Summary judgment in any negligence case is rare. The defendant has asked this Court to grant summary judgment based upon a very selective reading of the evidence. The defendant essentially ignores much of the evidence describing the conditions and scene which existed at the time and place of the incident made the basis of this suit. When all of the evidence is viewed in the light most favorable to the plaintiffs, it is clear that summary judgment is not appropriate as to the plaintiffs'

10

negligence and wantonness claims and that the defendant's motion as to those claims is due to be denied.

                                            Respectfully submitted,

                                            s/ J. Callen Sparrow
                                            J. Callen Sparrow (ASB-4515-R79J)
                                            Attorney for Plaintiffs

**OF COUNSEL:**

**HENINGER GARRISON DAVIS, L. L. C.**
P. O. Box 11310 (35202)
2224 1st Avenue North
Birmingham, AL 35203
Phone:    (205)326-3336
Facsimile:    (205)326-3332
E-mail:    jcsparrow@hgdlawfirm.com

## CERTIFICATE OF SERVICE

      I hereby certify that on the 14th day of August 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

J. Burruss Riis, Esq.
Katie L. Hammett, Esq.
HAND ARENDALL, LLC
P. O. Box 123
Mobile, Alabama 36601
251-432-5511
(Counsel for Lane Heard Trucking, LLC)

Richard M. Freeman, Jr., Esq.
RUSHTON, STAKELY, JOHNSTON
  & GARRETT, P.A.
P. O. Box 270
Montgomery, Alabama 36101-0270
Telephone:   334-206-3100
Facsimile:   334-265-8711
(Counsel for Christy Leann Champion)

Linda Hinson Ambrose, Esq.
ROGERS AND ASSOCIATES
3000 Riverchase Galleria, Suite 650
Birmingham, Alabama 35242
Telephone: 205-982-4620
(Counsel for Northland Insurance Company)

  And I certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants

Alex L. Holtsford, Jr. Esq.
P. O. Box 4128
Montgomery, Alabama 36103-4128

            s/ J. Callen Sparrow
            Of Counsel