IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| GERALD RUHNOW; CONNIE RUHNOW, | * * * | |
| Plaintiffs, | * * | Civil Action File Number 2:05-cv-527-F |
| v. | * * | |
| LANE HEARD TRUCKING, et. al. | * * | |
| Defendants. | * * | |
| NORTHLAND INSURANCE CO. | * * | |
| Intervener, | * * | |
| v. | * * | |
| LANE HEARD TRUCKING, et. al. | * * | |
| Defendants. | * | |

**INTERVENER'S STATEMENT OF DISPUTED FACTS,
AND BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Comes now Intervener, Northland insurance Company, ("Northland") pursuant to Rule 56 of the Federal Rules of Civil Procedure, and files its Statement of Disputed Facts and Brief in Opposition to Defendant's, Lane Heard Trucking's ("Lane Heard") Motion for Summary Judgment.

**STATEMENT OF DISPUTED FACTS**

There is a factual dispute as to whether Lane Heard's employee, Michael Duke, could have avoided the accident that resulted in the damages to Northland and the plaintiffs in this

case.  Lane Heard's motion for summary judgment with respect to Northland's negligence claim is based on the fact that third parties did not think Mr. Duke could see the motorcycle lying in the road.  However, there is a question of fact as to whether Mr. Duke *could or should have* seen the motorcycle in his lane of traffic and whether he could have avoided the accident that is the subject of this lawsuit.   There is also a question of fact as to whether Mr. Duke was driving too fast for conditions, which contributed to the cause of this accident.

Randall Jackson, a truck driver from Florida, witnessed the accident.  He was following behind the Lane Heard Truck.  As he was behind the Lane Heard Truck, he did not see the motorcycle in the road.  He saw sparks come out from under the Lane Heard truck, which veered to the right and then sharply to the left across the median, landing on its side in the opposite lane, where it was struck by Mr. Ruhnow's vehicle.  (Jackson Deposition, Ex. A, pp. 64)

Mr. Jackson testified that it was night time had been raining, and the road was wet.  The speed limit on that stretch of road is 55 miles per hour.  Mr. Jackson was in the right hand lane.  Shortly before the accident, the Lane Heard truck passed Mr. Jackson as he was going up a hill.  Jackson was going about 45 mph up the hill because his trailer was fully loaded.  The Lane Heard truck passed him on the hill, at between 50 and 55 mph.  (Ex. A, pp.27) Jackson lost site of the Lane Heard Truck as it topped the hill.  Jackson then topped the hill, and saw the sparks under the truck a few minutes later.  (Ex. A, pp. 64).

Defendant, Michael Adkins testified that his motorcycle collided with Ms. Champion's car at the bottom of a hill.  He measured the distance, and it is about 450 feet from the crest of the hill to where his motorcycle was lying in the road.  (Adkins Depo., Ex. B, pp.37, 52) Although the motorcycle was still in the right hand lane, *its tail lights were on*. (Ex. B, p. 17) Ronnie Perkins, a co-worker of Adkins, was traveling behind the Lane Heard truck, and reported

that he could see the taillights for the motorcycle *before* the Lane Heard truck struck it. (Ex. B, p.24)

The headlights and tail lights of Ms. Champion's car were also in the "on" position. Adkins described visibility in the area as "excellent". (*Id.,* p.31) Adkins was standing next to his motorcycle at the time the Lane Heard truck ran over it. He saw no brake lights and no evidence that the driver of the truck made an attempt to avoid the motorcycle. Adkins estimated that the truck was traveling between 65 and 70 miles per hour when it ran over his motorcycle.) Ex. B, pp. 19)

Ms. Champion was facing the hill after her accident with Michael Adkins. She saw the Lane Heard truck coming toward them. She watched it for about a minute, as it traveled down the hill toward them. (Champion Depo., Ex. C, pp. 24) Champion saw the truck hit the motorcycle and saw the truck hit Mr. Ruhnow's vehicle. The Lane Heard truck made no attempt to evade the motorcycle. Prior to this accident, the lights of her vehicle were still on. (Ex. C, pp. 25)

Based on the testimony of the witnesses described above, there are factual issues as to whether Mr. Dukes, the driver of the Lane Heard truck, was driving too fast for conditions at the time of the accident and not paying proper attention to traffic. As such, there are questions of fact as to whether Lane Heard's employee negligently caused or contributed to the accident that is the subject of this lawsuit.

## **ARGUMENT**

Northland did not file "wantonness", negligent hiring, retention and training, loss of consortium or punitive damages claims against Lane Heard. As such, Sections II, IV, V and VI. of Lane Heard's Motion for Summary Judgment do not apply to Northland, and no response by

Northland is required. After consideration of evidence revealed during discovery, Northland voluntarily withdraws its negligent entrustment claim against Lane Heard, which is Count III of its Amended Complaint.

**STANDARD OF PROOF**

The movant has the initial burden of showing that there is no genuine issue of material fact. The nonmovant then must show the existence of an element essential to its case. *Earley v. Champion Int'l. Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990). To do so, the nonmoving party must show evidence on which the jury could reasonably find in its favor. *Home Oil Co., Inc. v. Sam's East, Inc.*, 252 F.Supp.2d 1302, 1305 (M.D. Ala. 2003). In determining whether such a question of fact exists, the court is to construe the evidence and factual inferences in the light most favorable to the nonmovant. *Id.*

    **I.**    **There is a Question of Fact as to Whether Lane Heard's Employee, Michael Duke Breached the Standard of Care in this Case.**

Lane Heard does not deny that it owed a duty to Northland and the Ruhnows in this case. Rather, it contends that the "undisputed facts" show that Mr. Duke did not breach that duty and that his actions were not the cause of the accident that is the subject of this lawsuit. However, Lane Heard's argument is based on third party speculation about what Mr. Duke "could, did or did not see" just prior to the accident. One such witness, Gene Richardson was driving in the <u>left hand</u> lane of the highway and talking with his wife. He was distracted, and testified that he did not notice the motorcycle in the <u>right lane</u> until he passed it. (Richardson Depo., Ex. D, pp. 28). Richardson's testimony that Mr. Duke could not see the motorcycle should be disregarded as speculative and without personal knowledge, and Northland's counsel objected to this testimony as such during Mr. Richardson's deposition. (Ex. D, p. 28). The fact that Mr. Richardson did

4

not see the motorcycle until he passed it (when he was in a different lane and talking with his passenger) had no relevance whatsoever on whether Mr. Duke could, or should, have seen it.

The testimony of Randall Jackson that defendant relies on so (Defendant's brief, pages 5-7) merely <u>describes</u> the accident, and related that Mr. Duke apparently made no effort to avoid the motorcycle. The fact that Jackson observed Mr. Duke driving for about two miles before the accident is not relevant to his driving at the *time* of the accident. It should be disregarded by the Court, as it does not provide any evidence as to whether Duke saw or should have seen the motorcycle in his lane of traffic prior to the accident.

Likewise, the police report attached as Exhibit C to Defendant's motion for summary judgment is unreliable and, in fact, establishes a question of fact in this case. The investigating officer, without providing any supporting facts, reasoning, or basis states that Mr. Duke "was obeying all traffic laws at the time of the accident". (Defendant's Brief, p. 7). Yet, Mr. Adkins testified that the Lane Heard truck was going approximately 65 miles per hour when it ran over his motorcycle. (Ex. B, p. 19). A jury question is certainly presented here as to whether Duke was indeed obeying traffic laws at the time. A jury could reasonably conclude that Mr. Duke was driving 10 miles over the speed limit and driving too fast for conditions (a dark and rainy night) when this accident occurred, and that his negligence proximately caused the accident.

Finally, the thoroughness of the officers' investigation is questionable. For instance, the investigating officers place the motorcycle in the <u>left hand</u> lane of Northbound 231 when, in fact, all witnesses to the accident testified that the motorcycle was in the *right hand* lane of Northbound 231. (Ex. C to Defendant's Motion for Summary Judgment, p. 16; Champion depositions, Ex. C, pp. 19, 20; Adkins' Depositions, Ex. B, p. 17; Richardson Depo., Ex. D, p. 12; Jackson Depo., Ex. A, p. 47).

### A.    There is a jury question as to whether Mr. Duke was driving too fast for conditions.

Alabama Code Section 32-5A-170 provides that "[n]o person shall drive a vehicle at a speed greater that is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. . . ". Northland contends that there is a jury question as to whether, under the facts of the case, Mr. Duke was driving too fast for conditions, and proximately caused the accident that is the subject of this lawsuit. As Lane Heard stated in its brief, it was "very, very, dark" (Defendant's Brief in Support of its Motion for Summary Judgment, p.4). As described in Norhtland's Statement of Facts, the witnesses testified that it had been raining and was still raining some at the time of the accident. According to Mr. Adkins, who witnessed the accident, Mr. Duke's truck was traveling at about 70 miles per hour when it passed him, where the speed limit is 55 miles per hour. (Ex. A, p. 64). Although Mr. Jackson testified that the Lane Heard truck was going about 55 miles per hour when it passed him *going up the hill*, the truck then came down the hill and the accident occurred at the bottom of the hill. Logically, vehicles pick up speed when they travel downhill, and Mr. Jackson testified that he never saw the truck's brake lights operate just before it ran over the motorcycle. (Ex. B, p. 19). However, Lane Heard contends that its driver was driving within the posted speed limit at the time of the accident.

In the case of *Hornady Truck Line, Inc. v. Meadows, et. al.* 847 So.2d 908 (Ala. 2002), four people were injured when a car traveling on I-65 Northbound struck a tractor-trailer it was attempting to pass, and then veered across the median, striking a car traveling on I-65 Southbound. The driver of the car that caused the accident was going less than 70 miles per hour at the time, which was the posted speed limit. The driver of the tractor-trailer's speed was about 65 miles per hour. However, it was raining, had been raining, and visibility was poor. In

6

affirming a jury verdict against the defendants on the negligence counts, the Alabama Supreme Court held that it was a question of fact for the jury as to whether the drivers were negligent with respect to the speeds at which they were driving their vehicles, notwithstanding the fact that they were driving within the posted speed limits, since Alabama law requires that a driver take into account existing conditions, such as weather and visibility, in considering a what is a "safe" speed to drive. 847 So.2d. at p. 915. Evidence of inattention is sufficient to allow the case to go to a jury. *Id*.

Since the facts of this case show that it is disputed as to whether Mr. Duke was driving too fast for conditions and, thus, negligently caused this accident. Northland requests that this Court DENY Lane Heard's Motion for Summary Judgment.

**B.    There is a question of fact as to whether Mr. Duke's inattentiveness and failure to keep a proper lookout caused the accident that is the subject of this lawsuit.**

The testimony of the witnesses is that the Lane Heard truck too no evasive action prior to running over Adkins' motorcycle. There is a question of fact as to whether Duke's inattentiveness caused the accident that is the subject of this lawsuit.

In the case of *Tolbert v. Tolbert*, 903 So.2d 103 (Ala. 2004), the father of a minor son sued the child's grandmother after both of them were killed in a motor vehicle accident in which the grandmother was the driver. The grandmother, Ms. Key, was driving down hill around a curve on a rain-slicked road when she lost control of her car, crossed into the other lane, and collided head on into another vehicle. There was no evidence that Key was speeding or any evidence as to the reason she lost control of her car. Since Key died in the accident, (as did Mr. Duke in this case) she could not testify as to why the accident occurred. The Tolbert court found no evidence of wantonness on the part of Ms. Key. However, it stated that the facts of *Tolbert*,

could show evidence of "inadvertence" on the part of the driver. 903 So.2d 103, and noted that negligence was characterized as "…inattention, thoughtlessness or heedlessness, a lack of due car…" *Id*. At pp. 114-115.

In *Mobile City Lines, Inc. v. J.A. Proctor*, 130 So2d 388 (Ala. 1961), the court held that there was a question of fact as to whether a bus driver negligently struck a pedestrian. The evidence was that the bus was traveling between 12 and 15 miles per hour and that the plaintiff came into contact with the bus. The plaintiff testified that he never saw the bus until it hit him. The bus driver testified that he did not see the plaintiff until he was about a foot or two away, and he braked immediately. The court ruled that it was a question of fact as to whether the bus driver was negligent in failing to keep a lookout in exercising due care, and whether his negligence proximately caused the accident. 130 So.2d 393.

In the case before this Court, the evidence is that Mr. Duke was driving approximately 65 – 70 miles per hour on a dark, rain slicked road when he ran over Adkins' motorcycle, lost control of his truck, and cased the accident that is the subject of this lawsuit. At the very least, it is a jury question as to whether Mr. Duke's negligence proximately caused or contributed to this action. As such, Northland requests that this Court DENY Lane Heard's Motion for Summary Judgment.

## **CONCLUSION**

Fro the above reasons, Northland submits that there is a question of fact as to whether Lane Heard's driver was negligent in causing the accident that is the subject of this lawsuit. As such, Northland requests that this Court DENY Lane Heard's Motion for Summary Judgment.

/S/ Linda Hinson Ambrose, Esq.
ASB 1753-B386
Attorney for Northland Insurance Co.

OF COUNSEL:
ROGERS AND ASSOCIATES
3000 Riverchase Galleria, Suite 650
Birmingham, Alabama 35242
(205) 982-4620
(205) 982-4630 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served upon counsel for all concerned parties a copy of the within and foregoing Northland Insurance Company's Initial Disclosures by depositing a copy of the same in the United States Mail in a properly addressed envelope with sufficient postage affixed thereto, addressed as follows:

Robert C. Ward, Jr., Esq.
RUSHTON, STAKELY, JOHNSTON
& GARRETT, P.A.
P.O. Box 270
Montgomery, Al. 36101-0270
Counsel for Defendant, Christy Leann Champion

J. Burrus Riss, Esq.
Katie Hammett, Esq.
HAND ARENDALL
P.O. Box 123
Mobile, Alabama 36601
Counsel for Defendant Lane Heard Trucking

Stephen D. Heninger, Esq.
HENINGER, GARRISON & VARGO, LLC
Po Box 11310
Birmingham, Alabama 35201
Counsel for Plaintiffs, Gerald and Connie Ruhnow

This 14th day of August, 2006.

/S/ Linda Hinson Ambrose, Esq.