IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| GERALD RUHNOW and CONNIE RUHNOW, | * |
| | * |
| Plaintiffs, | * |
| v. | * |
| | * CIVIL ACTION NO. |
| LANE HEARD TRUCKING, LLC., et al, | * 2:05 CV 527-MEF-SRW |
| | * |
| Defendants. | * |
| | * |

## REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE

Defendant Lane Heard Trucking, L.L.C. ("Lane Heard Trucking") submits this reply brief to reply to arguments made by plaintiffs Gerald and Connie Ruhnow ("Ruhnows") and Northland Insurance Company ("Northland"), and to further explain why its motion for summary judgment should be granted. Further, Lane Heard Trucking moves the Court to strike from the record certain exhibits attached to plaintiffs' opposition briefs.

Both the Ruhnows and Northland have voluntarily withdrawn or do not dispute that summary judgment in favor of Lane Heard Trucking is appropriate for all of their claims as to negligent entrustment, hiring, training, or supervising. (Plaintiffs' Brief in Opposition to Defendant's Motion for Summary Judgment filed by the Ruhnows ("Ruhnow Brief") [Doc. 53] at 10; Intervener's Statement of Undisputed Facts, and Brief in Opposition to Defendant's Motion for Summary Judgment ("Northland Brief") [Doc. 54] at 4). Therefore, the only claims at issue are negligence, wantonness, and loss of consortium. As discussed below, plaintiffs have wholly failed to present any evidence that suggests that Lane Heard Trucking's driver, Michael Duke, was in any way negligent or wanton.

I. **SUMMARY JUDGMENT STANDARD**

The summary judgment standard is clear and well-known:

> The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. *Id.* **"If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment."** *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986))(footnote omitted).

*U.S. Aviation Underwriters, Inc. v. Yellow Freight System*, 296 F. Supp. 2d 1322, 1330 (S.D. Ala. 2003) (emphasis added). As plaintiffs acknowledge, in order to avoid summary judgment "the nonmoving party must show evidence on which the jury could reasonably find in its favor." (Northland Brief at 4 (citing *Home Oil Co., Inc. v. Sam's East, Inc.*, 252 F. Supp. 2d 1302, 1305 (M.D. Ala. 2003); Ruhnow Brief at 9 (adopting and incorporating Northland's brief)). "Mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment." *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989); *see also Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1258 (11th Cir. 2001) ("the nonmoving party must provide more than a *de minimus* level of evidence…"). "If the non-moving party fails to 'make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof,' then the court must enter summary judgment for the moving party." *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001)(citation omitted). Further, in order to avoid summary judgment, the nonmovant must show "competent material reflecting admissible information that can be produced at trial and qualify as substantial evidence." Moore's Federal Practice 3d Ed. § 56.13[4].

"In cases in which the nonmoving party in a summary judgment motion bears the burden of proof at trial, there is a second step to the court's evaluation of the sufficiency of the evidence presented in opposition to the summary judgment motion. Once the nonmoving party has responded to the summary judgment motion, the court must evaluate 'the evidence presented through the prism of the substantive evidentiary burden.' The court will determine if there is a triable issue of fact in light of the 'actual quantum and quality of proof' the nonmovant must meet at trial." *Id.* at 56.13[3].

Plaintiffs rely on two arguments to support of their claims: (1) that Michael Duke was speeding and (2) that Michael Duke should have been able to see the motorcycle lying in the roadway.[1] However, neither of these arguments is supported by the admissible evidence of record.

## II. **EVIDENCE REGARDING DUKE'S SPEED**

Plaintiffs heavily rely on the testimony of Michael Adkins, the driver of the motorcycle, that he estimates that Michael Duke was traveling 65-70 miles per hour. Mr. Adkins' speculation as to the speed can hardly be characterized as definitive:

> Q. You testified that you did not see that truck until the moment it hit your motorcycle?
>
> A. That's correct.
>
> Q. I think Mr. Sparrow asked you earlier for an estimate of the speed at the impact. How are you able to estimate the speed that truck was going if you never saw it?
>
> A. Well, by living here, you can stand on 231 with [a] speed gauge, nine of ten trucks are going to be doing 65, 70 miles an hour. With the wind hitting me the way it did, it had to be.

---

[1] Plaintiffs argue that Michael Duke "had clear visibility for close to 500 feet." (Ruhnow's Brief at 6). The cited testimony in support of such statement, however, relates to visibility on a clear day and does not relate to the visibility on that stretch of 231 at night, much less on the night in question.

Q. Have you ever stood on the side of 231 with a speed gauge?

A. I've been in my truck, and them passing, and they were going fast.

Q. I understand that. But, did you pass Mr. Duke's truck that evening?

A. I did not see him.

Q. So you are just kind of guessing that, because he is [a] truck going [down] 231, that's probably how fast –

A. The way the wind hit me, I would say that he was doing it pretty quick. He was doing it pretty fast.

Q. Did any other cars pass you?

A. No, ma'am.

Q. So you didn't feel any wind before?

A. No ma'am.

Q. So you didn't have anything to compare that wind to?

A. No, ma'am.

Q. **So your only real point of reference to determine how fast the truck was going was the wind?**

A. **Right.**

Q. Do you think if you had been in your car following behind, you would have had a better estimate of how fast you were going?

A. Sure.

Q. **So you would defer to somebody that was following behind that truck as to how fast he was going?**

A. **That's correct.**

(Adkins Dep. at 71-73, attached hereto as Exhibit A)(emphasis added). Randall Jackson is just such a witness. He was traveling behind Mr. Duke, and as such Mr. Adkins would defer to his 50-55 miles per hour estimation of speed. Perhaps in an effort to discount such clear evidence of Mr. Duke's speed, Northland's brief states that "Jackson lost site [sic] of the Lane Heard Truck as it topped the hill." (Northland Brief at 2). There, however, is no citation in support of this statement, and does not appear to be Mr. Jackson's testimony at all. Mr. Jackson testified:

> Q. Okay. But you never lost sight of Mr. Duke's truck between when he passed you and when this wreck occurred?
>
> A.     That is correct.

(Jackson Dep. at 46, attached hereto as Exhibit B).

## III.    HEARSAY TESTIMONY REGARDING ALLEGED WITNESS

In an effort to refute the evidence that Michael Duke could not have seen the motorcycle in time to avoid the accident, plaintiffs can only point to Mr. Adkins' hearsay testimony that a witness, who has never been deposed or given sworn testimony himself, saw the taillights of the motorcycle while the witness was traveling behind the truck. (Ruhnow Brief at 4).[2] This statement is textbook hearsay testimony and should not be considered by this Court. Rule 801 of the Federal Rules of Evidence defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801. Mr. Adkins statement regarding what this alleged witness told him certainly meets this definition. Rule 802 dictates that this evidence is not admissible and should not be considered by this Court. Fed. R. Evid. 802 ("Hearsay is not admissible..."). As such, Lane Heard moves this Court to strike this inadmissible evidence from the record.

---

[2] The possibility of such a witness is not likely since Mr. Jackson clearly testified in his deposition that no vehicle was between himself and Michael Duke at the time of the accident. (Jackson Dep. at 54).

IV. **NEGLIGENCE**

The plaintiffs cannot present any affirmative proof that establishes that Michael Duke was in any way negligent in his conduct. All plaintiffs have done is establish that a horrible accident occurred that resulted in Michael Duke's death and Mr. Ruhnow's being injured. "[N]egligence will not be inferred by the mere showing of an accident...." *Mobile City Lines, Inc. v. Proctor*, 130 So. 2d 388, 392 (Ala. 1961). Further, the cases presented by plaintiffs do not support the finding of negligence in this case. Plaintiffs point to *Tolbert v. Tolbert*, 903 So. 2d 103 (Ala. 2004) in support of their negligence claim. *Tolbert*, however, involved the guest statute and the sole issue was whether defendant was wanton. In finding that the defendant was not wanton, the Court surmised:

> In the final analysis, it cannot be said that this evidence establishes "more than a showing of some form of inadvertence on the part of the driver" or that it rises to the required showing of "some degree of consciousness on the part of the defendant" that injuries are likely to result from his act or omission [as required for wantonness].

*Tolbert*, 903 So. 2d at 118 (internal citations omitted). However, there was never a determination of whether the facts would meet the negligence standard.

*Mobile City Lines, Inc. v. Proctor*, 130 So. 2d 388 (Ala. 1961) is inapposite. *Mobile City Lines* involved an appeal from the trial court's refusal to give a requested jury charge stating defendant's hypothesis regarding the accident. In *Mobile City Lines*, a bus driver driving through downtown Mobile hit a pedestrian walking across a city street. The Court determined that the bus driver "was under a [statutory] duty to exercise due care to avoid colliding with any pedestrian on the roadway and to sound the horn when necessary and to exercise proper precaution upon observing any child or confused or incapacitated person on the roadway." *Id.* at

392. Apparently feeling notice of a possible hazard was important, the Court distinguished this case from others where drivers were in areas where they would not expect to encounter pedestrians. *Id.* at 392-93. Certainly, in this case, Michael Duke could not and should not have been expected to be on notice that a motorcycle would be lying in a roadway. Therefore, this case provides no guidance in determining whether Michael Duke was negligent.

*Hornaday Truck Line, Inc. v. Meadows*, 847 So. 2d 908 (Ala. 2002), relied on by plaintiffs, demonstrates the exact type of evidence that does not exist in this case. In *Hornaday*, the plaintiff was able to present substantial and **admissible** evidence and testimony that the defendant was traveling at an unsafe speed for the conditions of that particular roadway at the particular time of the accident. *Id.* at 915. In this case, there is no such testimony or evidence to demonstrate Michael Duke was operating his vehicle at an unsafe speed or in an unsafe manner. Rather, plaintiffs rely only upon their own conjecture that perhaps Michael Duke should have seen the motorcycle. They have presented no admissible evidence, either deposition testimony of a witness or expert opinions, that indicates Michael Duke would have or should have been able to see the motorcycle in time to avoid the accident. In fact, all of the evidence suggests just the opposite, that Michael Duke was operating his truck in a safe manner, at a safe speed, and could not have seen the motorcycle in time to avoid it. (*See* Champion Dep. at 32; Richardson Dep. at 11-13; 17-18; 41; Jackson Dep. at 7-11, 28-29; Investigation Report)[3]. As such, Lane Heard Trucking's motion for summary judgment as to the negligence claims is due to be granted.

## V.   WANTONNESS

Wantonness requires a more aggravated state of mind than does negligence; wantonness requires an intent to act, or a conscious omission of duty, with knowledge of the circumstances and with a reckless disregard of the consequences. *Lynn Strickland Sales & Serv., Inc. v. Aero-*

---

[3] This evidence was previously submitted as exhibits to Lane Heard Trucking's motion for summary judgment.

*Lane Fabricators, Inc.*, 510 So. 2d 142, 145-146 (Ala. 1987), overruled on other grounds, *Alfa Mut. Ins. Co. v. Roush*, 723 So. 2d 1250, 1252 (Ala. 1998). In other words, "[i]mplicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury." *Yamaha Motor Co., Ltd. v. Thornton*, 579 So. 2d 619, 623 (Ala. 1991)(quoting *Central Alabama Electric Cooperative v. Tapley*, 546 So. 2d 371, 379 (Ala. 1989)(emphasis omitted). As demonstrated above, plaintiffs have utterly failed to present any evidence that Michael Duke was even negligent. They have certainly produced nothing that would allow any reasonable factfinder to determine that Michael Duke had the requisite state of mind to support a wantonness claim. In fact, the case of *Tolbert* cited by the plaintiffs further supports that there was no wanton conduct in this case. *See supra*, at 6 for a discussion of *Tolbert*. As such, Lane Heard Trucking's motion for summary judgment as to the wantonness claim is due to be granted.

## VI.     LOSS OF CONSORTIUM

A loss of consortium claim is purely derivative. *See e.g., Davis v. Wal-Mart Stores, Inc.*, 64 F. Supp. 2d 1176, 1181 (M.D. Ala. 1999); *Ex parte N.P.*, 676 So. 2d 928, 930 (Ala. 1996);. *Johnson v. Wal-Mart Stores, Inc.*, 987 F. Supp. 1376, 1397 (M.D. Ala. 1997). Because plaintiffs' have failed to present evidence that demonstrates Michael Duke was negligent, the loss of consortium claim must fail. As such, Lane Heard Trucking's motion for summary judgment as to the loss of consortium claim of Connie Ruhnow is due to be granted.

## CONCLUSION

In response to a well-supported motion for summary judgment, plaintiffs have failed to submit any evidence that creates a question of the existence of a genuine issue of material fact.

Plaintiffs have merely relied on their own speculation and an inadmissible hearsay statement that Michael Duke may have been able to see the motorcycle lying in the roadway. Speculation and inadmissible statements are simply not enough to defeat summary judgment. For all the reasons stated above and articulated in their original motion for summary judgment, Lane Heard Trucking is entitled to an order granting its Motion for Summary Judgment.

Respectfully submitted,

/s/ Katie L. Hammett
J. BURRUSS RIIS (RIISJ8057)
KATIE L. HAMMETT (HAMMK7587)
Attorneys for Defendant,
Lane Heard Trucking, L.L.C.,
Email: khammett@handarendall.com

OF COUNSEL:
HAND ARENDALL, L.L.C.
Post Office Box 123
Mobile, Alabama 36601
(251) 432-5511

## CERTIFICATE OF SERVICE

I do hereby certify that I have, on August 21, 2006, served a copy of the foregoing pleading on all parties of record as follows:

J. Callen Sparrow, Esq.
Attorney for Plaintiffs
HENINGER GARRISON DAVIS, LLC
2224 First Avenue North
Birmingham, Alabama 35203
*jcsparrow@hgdlawfirm.com*

Richard McConnell (Mac) Freeman, Jr.
Attorney for Defendant Christy Leann Ch
Rushton Stakely Johnston & Garrett PC
PO Box 270
Montgomery, AL 36101-0270
*rmf@rsjg.com*

Linda C. Ambrose, Esq.
Counsel for Northland Insurance Co.
Rogers & Associates
3000 Riverchase Galleria, Suite 650
Birmingham, AL 35244
*lambrose@spt.com*

Alex L. Holtsford, Esq.
Murry S. Whitt, Esq.
NIX HOLTSFORD GILLILAND
HIGGINS & HITSON, PC
Post Office Box 4128
Montgomery, Alabama 36103-4128
*aholtsford@nixholtsford.com*
*MWhitt@nixholtsford.com*

/s/ Katie L. Hammett

513017_1

# EXHIBIT A

Case 2:05-cv-00527-MEF-SRW   Document 58   Filed 08/21/2006   Page 11 of 19

1

```
            IN THE UNITED STATES DISTRICT COURT

             FOR THE MIDDLE DISTRICT OF ALABAMA

                      NORTHERN DIVISION


GERALD RUHNOW and CONNIE          *

RUHNOW,                           *

     Plaintiffs,                  *

                                  *

VS.                               * NO. 2:05 CV 527-F

                                  *

LANE HEARD TRUCKING, LLC.,        *

et al                             *

     Defendants.                  *
```

           ORAL DEPOSITION OF MICHAEL ADKINS,
a witness produced pursuant to the Federal Rules of
Civil Procedure, in the above-styled and numbered
cause on the 19th day of April, 2006, before Sheila
Hanson, CSR, a Notary Public in and for the State of
Alabama, at the law offices of Mr. Cliff Hastings
with Cervera, Ralph & Reeves, Attorneys at Law, Troy,
Alabama.

                     * * * * * * *

COPY

71

1  up or over? Do you know? Did you look straight
2  over?
3     A    I got up, stumbled off the road.
4     Q    At that moment were you aware of your
5  surroundings?
6     A    I think I was.
7     Q    And correct me if I'm wrong. I think
8  your testimony is that at that point, if you had
9  looked up, you would see your headlight of the
10 motorcycle or the taillight? Which one?
11    A    Headlight.
12    Q    Okay. But you didn't notice it at the
13 time, right after the accident?
14    A    No, ma'am.
15    Q    And just to clarify, when was the first
16 moment that you were aware that your motorcycle was
17 still on the road?
18    A    When I walked over to talk to
19 Ms. Champion, I leaned down to catch my breath
20 because -- had pain in my leg and wrist. I raised
21 up, seen my bike laying there. And all of a sudden
22 the wind from the truck just blew by me.
23    Q    Let's talk about that for a second. You
24 testified that you did not see that truck until the
25 moment it hit your motorcycle?

1   A    That's correct.

2   Q    I think Mr. Sparrow asked you earlier for
3   an estimate of the speed at the impact. How are you
4   able to estimate the speed that truck was going if
5   you never saw it?

6   A    Well, by living here, you can stand on
7   231 with speed gauge, nine of ten trucks are going to
8   be doing 65, 70 miles an hour. With the wind hitting
9   me the way it did, it had to be.

10  Q    Have you ever stood on the side of 231
11  with a speed gauge?

12  A    I've been in my truck, and them passing,
13  and they were going fast.

14  Q    I understand that. But, did you pass
15  Mr. Duke's truck that evening?

16  A    I did not see him.

17  Q    So you are just kind of guessing that,
18  because he is truck going 231, that's probably how
19  fast --

20  A    The way the wind hit me, I would say that
21  he was doing it pretty quick. He was doing it pretty
22  fast.

23  Q    Did any other cars pass you?
24  A    No, ma'am.
25  Q    So you didn't feel any wind before?

1    A    No, ma'am.
2    Q    So you didn't have anything to compare
3  that wind to?
4    A    No, ma'am.
5    Q    So your only real point of reference to
6  determine how fast that truck was going was the
7  wind?
8    A    Right.
9    Q    Do you think if you had been in your car
10 following behind, you would have had a better
11 estimate of how fast you were going?
12   A    Sure.
13   Q    So you would defer to somebody that was
14 following behind that truck as to how fast he was
15 going?
16   A    That's correct.
17   Q    You have been asked some questions about
18 Ronny Perkins?
19   A    Yes, ma'am.
20   Q    And what he might have said to you that
21 night?
22   A    Yes, ma'am.
23   Q    At what point did you talk to him that
24 evening?
25   A    After everything took place, the

# EXHIBIT B

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 1

```
 1           IN THE UNITED STATES DISTRICT COURT
             FOR THE MIDDLE DISTRICT OF ALABAMA
 2                     NORTHERN DIVISION
 3
 4   GERALD RUHNOW and CONNIE      *
     RUHNOW,                       *
 5                                 *
              Plaintiffs,          * CIVIL ACTION NO. 2:05 CV 527-F
 6                                 *
     vs.                           *
 7                                 *
     LANE HEARD TRUCKING, LLC.,    *
 8   et al.,                       *
                                   *
 9            Defendants,          *
                                   *
10
     * * * * * * * * * * * * * * * * * * * * *
11
     VIDEOTAPED
12   DEPOSITION OF:      RANDALL JACKSON
13   DATE TAKEN:         April 1, 2006
14   TIME:               9:19 a.m.
15   PLACE:              111 North Orange Avenue
                         Suite 1060
16                       Orlando, Florida
17   REPORTED BY:        Jan L. O'Steen, Court Reporter
                         Notary Public
18
19   * * * * * * * * * * * * * * * * * * * * *
20
21
22
23
24
25
```

Page 46

1  Q   And you're confident about that?
2  A   Yes. That is correct. There was only one
3  motorcycle --
4  Q   And as I understood --
5  A   -- on the road.
6  Q   -- what you said earlier, it was a minute
7  or two, couple of minutes between when the
8  motorcycle passed you and when Mr. Dukes passed you?
9  A   Yes. That's correct.
10 Q   Did the motorcycle then move on down the
11 road out of your field of vision?
12 A   He was out of my field of vision once I
13 got behind Michael's truck.
14 Q   Right. And if I'm mistaken, tell me. Did
15 you say it was about 15 minutes between when these
16 vehicles passed you and when the wreck occurred that
17 we're here to talk about?
18 A   No, it wasn't 15 minutes.
19 Q   How long was it?
20 A   It would have been, I don't know, maybe
21 ten minutes. I'm not really sure.
22 Q   Okay. But you never lost sight of
23 Mr. Duke's truck between when he passed you and when
24 this wreck occurred?
25 A   That is correct.

LEGALINK, A MERRILL COMPANY
Court Reporting * Legal Videography * Trial Services

Page 54

1  side of the highway other than you and the two
2  trucks that had just gotten in a wreck?
3       A    Not that I can remember.  I really wasn't
4  paying attention to what was alongside of me.
5            (Off-the-record discussion.)
6  BY MR. SPARROW:
7       Q    You've told me, Mr. Jackson, that you
8  believe that Mr. Dukes stayed in the right-hand lane
9  after passing you, correct?
10      A    Yes.  That is correct.
11      Q    After -- after Mr. Duke passed you,
12 between that time and the impact and all the sparks
13 flying, any other vehicles pass you that you
14 remember?
15      A    After he passed me?
16      Q    Yes.
17      A    Not that I remember, no.
18      Q    Was there anyone between you and Mr. Dukes
19 at the time that this impact occurred?
20      A    No, there wasn't.
21      Q    Other than who I believe is John Lynch,
22 anybody close behind you?
23      A    Other than Mr. Lynch, I don't know how
24 close he was behind me.
25      Q    All right.  Well, behind you.