IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| GERALD RUHNOW; CONNIE RUHNOW, | * | |
| | * | |
| Plaintiffs, | * | Civil Action |
| | * | File Number 2:05-cv-527-F |
| v. | * | |
| | * | |
| LANE HEARD TRUCKING, et. al., | * | |
| | * | |
| Defendants. | * | |
| | * | |
| NORTHLAND INSURANCE CO. | * | |
| | * | |
| Intervener, | * | |
| | * | |
| v. | * | |
| | * | |
| LANE HEARD TRUCKING, et. al. | * | |
| | * | |
| Defendants. | * | |

## MOTION TO EXCLUDE EXPERT TESTIMONY

COMES NOW Intervenor, Northland Insurance Company, ("Northland") and requests that this Court issue an Order excluding the testimony of Chris Bloomberg, an expert named by defendant, Lane Heard Trucking, LLC, to testify at the trial of this matter, on the basis that Mr. Bloomberg's testimony fails the test for admissibility propounded by the United States Supreme Court in the case of *Daubert v. Merrill Dow Pharm., Inc.,* 509 U.S. 579 (1993). The testimony should also be excluded in that it that it is not reliable or relevant pursuant to Federal

Rules of Evidence 401, 402, 403, 702and 703. In support of its motion, Northland

shows this Court as follows:

## STATEMENT OF FACTS

This lawsuit arises from two motor vehicle accidents that occurred on the

night of March 7, 2005, on Highway 231, South of Troy, Alabama. The first

accident involved a collision between a car driven by defendant Christy Champion

("Champion") and a motorcycle driven by defendant Michael Adkins ("Adkins").

After that accident, Adkins' motorcycle was lying in the right hand lane of

Highway 231 South. It was then run over by a truck owned by defendant Lane

Heard Trucking ("Lane Heard"). The driver of the Lane Heard truck, Michael

Duke, then lost control of the vehicle, crossed the median, and struck a truck

traveling northbound on Highway 231, which was owned and operated by plaintiff,

Gerald Ruhnow. Both trucks burst into flames. Mr. Ruhnow was injured in the

accident, and Mr. Duke passed away as a result of the injuries he received in the

accident. Northland insured Mr. Ruhnow's truck and trailer. The truck was

destroyed and the trailer was substantially damaged as a result of this accident.

As this Court has already ruled, there is a factual dispute as to whether Lane

Heard's employee, Mr. Duke, could have avoided the accident that resulted in the

damages to Northland and the plaintiffs in this case. There is also a question of

fact as to whether Mr. Duke was driving too fast for conditions, which contributed to the cause of this accident.

Randall Jackson, a truck driver from Florida, witnessed the accident. Mr. Jackson testified that it was night time, had been raining, and the road was wet. The speed limit on that stretch of road is 55 miles per hour. Mr. Jackson was in the right hand lane. Shortly before the accident, the Lane Heard truck passed Mr. Jackson as he was going up a hill. Mr. Jackson was going about 45 mph up the hill because his trailer was fully loaded. The Lane Heard truck passed him on the hill, at between 50 and 55 mph. (Jackson Deposition, Ex. A) p.27) He was following behind the Lane Heard Truck. As Jackson topped the hill, the Lane Heard truck was about 75 yards in front of him. He was behind the Lane Heard Truck and did not see the motorcycle in the road. Mr. Jackson did see sparks come out form under the Lane Heard truck. The Lane Heard truck veered quickly to the right and then sharply to the left across the median, landing on its side in the opposite lane, where it struck Mr. Ruhnow's vehicle. (Jackson Depo. pp. 7-9, 64).

Adkins testified that his motorcycle collided with Ms. Champion's car at the bottom of a hill. He measured the distance, and it is about 450 feet from the crest of the hill to where his motorcycle was lying in the road. (Adkins Depo., Ex. "B"), pp. 37, 52) Although the motorcycle was still in the right hand lane, *its tail lights were on*. (*Id*., p. 17) (emphasis supplied)

The headlights and tail lights of Ms. Champion's car were also in the "on" position. Adkins described visibility in the area as "excellent". (Adkins Depo., p. 31) Adkins was standing next to his motorcycle at the time the Lane Heard truck ran over it. He saw no brake lights and no evidence that the driver of the truck made an attempt to avoid the motorcycle. Adkins estimated that the truck was traveling between 65 and 70 miles per hour when it ran over his motorcycle. (Adkins Depo., p. 19)

Ms. Champion was facing the hill after her accident with Michael Adkins. She saw the Lane Heard truck coming toward them. She watched it for about a minute, as it traveled down the hill toward them. (Champion Depo., Ex. "C"), p. 24) Champion saw the truck hit the motorcycle and saw the truck hit Mr. Ruhnow's vehicle. The Lane Heard truck made no attempt to evade the motorcycle. Prior to this accident, the lights of her vehicle were still on, and her tail lights, though broken, still operated. (*Id.*, pp. 25, 84-86)

On or about November 21, 2006, Defendant, Lane Heard, submitted its expert designation, naming Chris Bloomberg, an accident reconstructionist, as its expert to testify at the trial of this matter. Mr. Bloomberg's deposition was taken on December 18, 2006. Mr. Bloomberg's opinion is that the Alabama Code requires that low beams on headlights should illuminate 100 feet in front of a vehicle. He did not do any calculations in an attempt to determine the speed that

the Lane Heard truck was traveling at the time of the accident. Rather, he assumed that it was traveling at 55 miles per hour, based on the testimony of Randall Jackson, who estimated that to be the speed of the truck a few minutes earlier when it passed him going up a hill. (Bloomberg Deposition, Ex. "D", pp.17-18; 32-35, 113) He calculated the feet per second that the Lane Heard truck would be traveling at 55 miles per hour, and assigned a perception/reaction time for the driver. Based on this, he determined that the driver of the Lane Heard truck would not have seen the motorcycle in the lane in front of him until he was 100 to 150 feet away from it, and would not have had time to avoid the accident. (*Id.,* pp. 32-35).

Mr. Bloomberg testified that he went to the scene of the accident on March 9, 2005, two days after the accident. He surveyed the scene to document the road, but he did not know how far back he surveyed, and did not know the distance from the crest of the hill north of the accident scene to the point of impact where Lane Heard's truck ran over Adkins' motorcycle. (Ex. "D", pp. 12-14) He did not know if the lights on Champions' car or Adkins' motorcycle were on at the time of the second accident, but admitted that if they were, it was "possible" the driver of the Lane Heard truck could have seen them more than 100 feet away. (Id., pp. 24-27)

Mr. Bloomberg testified that, even though Alabama law requires headlights on low beam to illuminate 100 feet in front of the vehicle, he did not know how far

most vehicles' headlights illuminate, as it would depend on how they were calibrated. (*Id.*, p. 22)  No evidence has been produced as to whether the Lane Heard truck's headlights were calibrated to comply with Alabama law.

Additionally, Mr. Bloomberg, in expressing his expert opinion, "assumes" that the Lane Heard truck's low beams were on at the time of the accident that is the subject of this lawsuit.  He admitted that Alabama Code Sec. 32-5-242, which contains the requirement that low beams illuminate 100 feet, also requires that high beams illuminate for 350 feet in front of the vehicle.  Bloomberg admitted that he did not know if the Lane Heard truck had its high beams on at the time of the accident, but just "assumed" that his low beams were on.  He admitted that, if the high beams were on, then the driver would have more time to react when he saw the motorcycle in the road.  (Ex. "D", pp. 108-113)

Finally, Mr. Bloomberg testified that he did understand that it was dark and raining at the time of the accident. (*Id.*, p. 24)  He has the ability to do "nighttime visibility analysis", which is performed on a night that duplicates the moon phase corresponding to the time of the accident, using vehicles or other objects of the same type as those involved in the accident.  However, he did not do one in this case because it is "quite an undertaking", even though it can be done.  (*Id.*, pp. 61-62, 118-120).

## ARGUMENT

Lane Heard, as the party offering the expert testimony of Mr. Bloomberg, has the burden of proving, by a preponderance of the evidence, that Mr. Bloomberg's testimony is competent and admissible in this case. *Allison v. McGhan Medical Corporation, et. al.,* 184 F.3d 1300, 1306 (11th Cir. 1999). For the reasons stated below, Northland submits that Lane Heard cannot meet this burden.

Federal Rules of Evidence 403, 702 and 703 give the courts discretion to preclude expert testimony unless it passes a more stringent standard of reliability and relevance. *See, Kip, supra.,* at p. 1310.

Federal Rule of Evidence 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." The United States Supreme Court has determined that this requires trial courts to become evidentiary gatekeepers and to ensure that scientific testimony or evidence admitted is not only relevant, but also reliable. *Daubert v. Merrill Dow Pharm., Inc.,* 509 U.S. 579, 589 (1993). The rule admits only "scientific knowledge" and not speculation or subjective belief. This rule has been

extended to apply also to technical or other specialized knowledge. *Kuhmo Tire Co., v. Carmichael,* 526 U.S. 137, 147 (1999).

The proposed expert testimony must be supported on "good grounds" and there are four factors to aid the court in determining reliability: (1) testability of the theory; 2) whether there is a known or potential rate of error; 3) whether the theory has been subjected to peer review; and 4) whether the theory has received general acceptance in the relevant community. *Daubert,* 509 U.S. at 590, 593-594. The eleventh circuit has ruled that an expert's testimony should only be admitted if the expert is qualified to testify competently about the matters he is to discuss, the expert's methodology supporting his conclusions is sufficiently reliable and the expert testimony is relevant and helps the trier of fact to understand the evidence or determine a fact in issue. *Allison v. McGhan Medical Corp.,* 184 F.3d 1300, 1309.

Northland is not challenging Mr. Bloomberg's qualifications to testify as an expert in this case. However, it does contend that his testimony is not relevant or reliable and, thus, should be excluded in this case. Mr. Bloomberg's purported testimony is that the driver of the Lane Heard truck was obeying all traffic laws, driving the speed limit, paying attention and had his low beams on at the time of the accident and, as such, did not have sufficient time to react to avoid the motorcycle lying in his lane of traffic. As such, he intends to testify that this was simply an unavoidable accident.

Mr. Bloomberg has only testified to a theory that the driver of the Lane Heard truck could not avoid the accident that resulted in Mr. Ruhnow's injuries and damages to his truck and trailer. This theory is based on assumptions and speculation, which Mr. Bloomberg has not attempted to prove or disprove according to the scientific method. He testified that he assumed that Mr. Duke was driving 55 miles per hour based on the testimony of someone whom he passed going up a hill minutes before the accident. He assumed that the Lane Heard truck had its low beams on because there were other cars "in the area" and he assumed that the low beams were properly calibrated to illuminate 100 feet in front of the vehicle, even though there is absolutely no evidence on which to base this assumption. Finally, although Mr. Bloomberg admitted that he could perform a nighttime visibility analysis to try to duplicate the conditions on the night of the accident, he did not do one.

To satisfy the standards of *Daubert* and the Federal Rules of Evidence, Lane Heard must prove that Mr. Bloomberg's offered testimony is both reliable and relevant. In order to be reliable, Lane Heard must prove that Bloomberg's theory has been subjected to peer review, has a known or potential rate of error and is generally accepted in the scientific community. *Daubert,* 509 U.S. at 593-594.

In order to be reliable, Mr. Bloomberg's testimony must not be based on personal opinion, but on scientific knowledge. "Scientific" means proper

grounding in methods and procedures of science and "knowledge" being more than a subjective belief or unsupported speculation. *Daubert,* 509 U.S. 589-90

Mr. Bloomberg's opinion and conclusions, as described above, are based on assumptions and not facts. He then "leaps" to the conclusion that Mr. Duke could not have avoided the accident that injured and damaged Mr. Ruhnow and Northland. His methodology in coming to his opinions is not reliable because it has not been tested, peer reviewed and there is no evidence that making such leaps based on mere assumptions is generally accepted in the scientific community. *See, e.g., Kip, supra* at p. 1314 (where the eleventh circuit warns against allowing evidence where an expert uses an accepted scientific premise to "leap" to an unsupported one).

Finally, Lane Heard cannot show that Bloomberg's opinions and conclusions in this case are "relevant" under *Daubert.* In order to be relevant, the testimony must "have a valid scientific connection to the disputed facts in the case." *Daubert*, 509 U.S. at 591.[1] As stated above, Bloomberg's conclusion in this case relies on unsubstantiated assumptions, and he then "leaps" to a conclusion from them. This is the very type of "leap of faith" that *Daubert* was designed to prevent. *Rider v. Sandoz Pharms. Corp.* 295 F.3d 1194, 1202 (11th cir. 2002)

---

[1] Likewise, Federal Rule of Evidence 702 requires that there be a valid scientific connection between the opinion and the facts of the case. Rule 703 allows the expert to rely on facts or data that might not otherwise be admissible. Yet, neither rule allows an expert to testify to conclusions based on unsubstantiated assumptions, such as the speed of the Lane Heard vehicle at the time of the accident, Duke's use of low beams and the assumption that the low beams were properly calibrated to comply with Alabama law, as Mr. Bloomberg does in this case.

## CONCLUSION

For the foregoing reasons, Northland requests that this Court issue an order EXCLUDING the testimony of Lane Heard's expert, Chris Bloomberg, at the trial of this matter.

Respectfully submitted this 25th day of January, 2007.

/s/ Linda Hinson Ambrose, Esq.
ASB 1753-B386
Attorney for Northland Insurance Company

OF COUNSEL:
ROGERS AND ASSOCIATES
3000 Riverchase Galleria, Suite 650
Birmingham, Alabama 35244
(205) 982-4620
(205) 982- 4630 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

R.  Mac Freeman, Esq.
RUSHTON, STAKELY, JOHNSTON
& GARRETT, P.A.
P.O. Box 270
Montgomery, Al. 36101-0270

J. Burrus Riss, Esq.
Katie Hammett, Esq.
HAND ARENDALL
P.O. Box 123
Mobile, Alabama 36601

Callen Sparrow, Esq.
HENINGER, GARRISON  & VARGO, LLC
Po Box 11310
Birmingham, Alabama 35201

Murry S. Whitt, Esq.
Nix, Holtsford, Gilliland, Higgins & Hitson
P.O. Box 4128
Montgomery, Alabama 36103
Counsel for Defendant, Michael Adkins

Respectfully submitted,
/s/ Linda Hinson Ambrose
ROGERS & ASSOCIATES
Suite 650
Birmingham, Alabama  35244
(205) 982-4620
(205) 982-4630 – FAX
E-mail:  lambrose@spt.com
ASB – 1753-B38L